# Illinois Official Reports

## Appellate Court

---

### *Draper & Kramer, Inc. v. King*, 2014 IL App (1st) 132073

---

| | |
|---|---|
| Appellate Court Caption | DRAPER AND KRAMER, INC., as Managing Agent for Island Terrace, Plaintiff-Appellee, v. NICOLE KING, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-2073 |
| Filed<br>Rehearing denied | December 19, 2014<br>January 28, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-M-1707752; the Hon. Martin P. Moltz, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | LAF, of Chicago (Lawrence D. Wood, Miriam Hallbauer, and Meghan P. Carter, of counsel), for appellant.<br><br>Sanford Kahn, Ltd., of Chicago (Richard W. Christoff, of counsel), for appellee. |

| Panel | PRESIDING JUSTICE PALMER delivered the judgment of the court, with opinion. |
|---|---|
| | Justices Gordon and Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Nicole King resides with her two minor children in an apartment at Island Terrace in the City of Chicago, a section 8 housing unit for which she paid a reduced amount of rent based on a percentage of her income.[1] Plaintiff, Draper & Kramer, Inc., as representative of Island Terrace, filed a forcible entry and detainer action for possession against defendant on April 3, 2013, for nonpayment of rent. The complaint alleged that defendant owed the sum of $189 in rent. The matter was set for proceedings before the circuit court on April 18, 2013.

¶ 2    On April 18, 2013, defendant appeared in court without the assistance of an attorney. The circuit court entered an order granting possession and recovery of $198.09, plus costs, to plaintiff. The order provided that enforcement of the judgment was stayed until May 15, 2013. Written at the top of the typed order was the word "Agreed" next to the title of the order. At the bottom, the word "Agreed" was again written in, with defendant's signature next to it.

¶ 3    On May 7, 2013, defendant's attorney filed an appearance and demand for a jury trial, along with a motion to vacate the April 18 agreed order pursuant to section 2-1301(e) of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-1301(e) (West 2012)). Defendant argued that the April 18 order should be vacated because she did not understand that she was agreeing to pay the amount due and also surrender possession of the apartment; she believed she was agreeing to pay the amount demanded and remain in the apartment. She urged that the order should be vacated because of the gross disparity in the parties' capacities and bargaining positions as defendant was not represented by counsel, was unsophisticated and unfamiliar with the law and courtroom procedures, the order was unreasonably favorable to plaintiff, and she had a meritorious defense to the eviction action.

¶ 4    In defendant's affidavit attached to her motion, she averred that she currently paid "$17 or $9" per month in rent[2] and her federally subsidized rental assistance runs with the premises, so she would lose it if forced to leave. She averred that she receives $526 per month in food stamps and has no other source of income. She previously received a "Temporary Assistance to Needy Families" cash grant (TANF) in the amount of $437, but her TANF benefits stopped in February 2013 and she last received TANF money in January 2013. Her rent in December 2012 was $5, and in January 2013, it increased to $77 because her TANF benefits had been increased. She averred that she paid her January rent on January 18, 2013. She then received a

---

[1]"Section 8 is a Federal housing subsidy program administered by the United States Department of Housing and Urban Development (HUD)" which assists low-income families to find decent and affordable housing. *Midland Management Co. v. Helgason*, 158 Ill. 2d 98, 101 (1994) (citing 42 U.S.C. § 1437f (Supp. III 1991)). HUD enters into contracts with housing owners which makes units available to low-income families, and the rental amount is determined by a formula based on income. *Id.* at 101-02.

[2]The complaint stated that her monthly rental rate was $9, effective on April 1, 2013. Defendant averred that her "recertification paperwork says $17" per month.

"Notice of Change" from the Illinois Department of Human Services (DHS) around January or February 2013 (TANF notice) advising her that the TANF benefits would stop. She averred that she received the TANF notice on a Friday after 5 p.m., and she brought it to the property manager's office on the following Monday and gave it to "Sandy" at the front desk. However, Sandy would not take the TANF notice and instructed her to return after lunch. Defendant averred that she was unable return that afternoon because of childcare duties, but that evening, defendant made a copy of the TANF notice and placed the copy in the management office's drop box attached to the office door because it was after hours. She averred that plaintiff accepts rent and other letters through the drop box. She did not hear from plaintiff and assumed that the letter was received and she would be informed when to come to the office. However, on approximately March 9, 2013, defendant received a five-day notice from plaintiff informing her that she owed $189.09 in unpaid rent. She did not receive a notice in February regarding February's rent. The notice was placed under her door.

¶ 5        Defendant averred that the Monday following receipt of the five-day notice, she spoke with plaintiff's property manager, Antoinette Moton, who informed her that defendant never paid February or March rent. Defendant averred that she told Moton that she placed the TANF notice regarding her change of income in the drop box, but Moton indicated that she never received it. Defendant told Moton she would obtain another copy of the TANF notice for Moton. Defendant had misplaced her copy and she went to the DHS office to get another copy on March 12, 2013. However, her caseworker was on vacation, so defendant had to return a week later and she was able to obtain a copy of the letter at that point. Defendant averred that she gave Moton a copy of the TANF notice on March 21, 2013. On that same day, she received a letter from Moton. Defendant also averred that she went to speak with Moton that day, and Moton told her that she owed the rent because she did not put the TANF notice "in her hand," and told defendant to pay the rent and fees. When defendant stated that she could not afford to, Moton indicated that there was nothing she could do because "it was already in court." Defendant averred that she also received court papers instructing her to go to court on April 18, 2013.

¶ 6        Defendant further averred that she went to court on April 18, without an attorney, but was unfamiliar with the procedure and did not know she "could ask for a continuance to get a free lawyer." While she was looking for her line number outside the courtroom, the attorney for plaintiff, Eileen Kahn, asked if she wanted to discuss the case. Defendant averred that Kahn asked if she had the money, and defendant stated that she did. She asked if defendant had the fees, but defendant indicated that she did "not have them all" and did not know how much they were. Defendant averred that Kahn indicated that she also did not know. Kahn told defendant, "it was no deals if I did not have the money." She confirmed that she had the $189. They then went into the courtroom and sat in different areas. Defendant averred that Kahn summoned her and stated that she "would give me time to pay" and said defendant had until April 30, 2013. Defendant asked for more time, and Kahn gave her until May 15, 2013. Kahn then "wrote 'agreed' on an order" but defendant did not sign anything at the time.

¶ 7        Defendant further averred that when her case was called, the judge asked whether they had come to an agreement, and Kahn affirmed that they agreed defendant would pay $189 plus fees by May 15, 2013. The judge asked defendant if she agreed, and defendant said "yes." Kahn stated that defendant "needed to sign the paper," so defendant signed it, but she did not read it. Defendant then raised her hand and the judge allowed her to ask a question, and she asked how

much she had to pay in attorney fees. The judge responded that she only had to pay court costs, which were approximately $375. The judge stamped the paper and the clerk gave defendant a copy. Defendant averred that she thought she was agreeing to pay the money by May 15, 2013, but she did not know that she had also agreed to surrender possession in the order.

¶ 8     Defendant further averred that her property manager was on vacation around that time, but she called Moton on Monday, April 22, 2013, to tell her that she had the money and to ask if she had talked to Kahn about the agreed order. However, Moton stated that she (Moton) would not accept defendant's money because the "judge had given her [Moton] possession of the property, and she [Moton] just wants me [defendant] out." Defendant responded that no one told her that she had agreed to move. Defendant went to Moton's office to explain what happened in court. Moton explained "that what she [Moton] meant by 'no deals' was she just wanted me [defendant] out period, no deals, no money."

¶ 9     Defendant averred that she had meritorious defenses to the eviction action and she would not be able to afford other safe and decent housing for her children based on her limited income. Defendant testified that she did not pay within the five days of the five-day notice because she also received a paper regarding the matter going to court and because Moton told her that she was sending the matter to plaintiff's attorney.

¶ 10    In addition to her affidavit, defendant also attached to her motion to vacate the TANF notice, which was dated January 31, 2013; plaintiff's five-day notice dated March 9, 2013; and plaintiff's March 21, 2013, letter. The TANF noticed stated that her cash benefits would stop as of February 17, 2013. The five-day notice stated that defendant owed $189.09 in rent, and unless payment was made within five days after service of the notice, her right of possession of the apartment would be terminated. It indicated that it was served on defendant "by delivering a true copy to" defendant. The March 21, 2013, letter from Moton stated that the five-day notice period had expired and defendant owed $189.09, and that her account "will be forwarded to the attorney on Friday, March 22, 2013, NO EXCEPTIONS. Once your account goes to the attorney your account could be billed up to $600 for legal fees."

¶ 11    At the hearing on defendant's motion to vacate on May 28, 2013, defendant's counsel argued that the April 18 agreed order should be vacated because defendant thought she was agreeing to "pay and stay" and because of the disparity in bargaining power as defendant was not represented by counsel at the time. Plaintiff's counsel, Kahn, stated that she never promises anyone that they can "pay and stay" and she never told defendant that she could "pay and stay." She argued that her file indicated "no deals" and "no promise." Counsel asserted that plaintiff did not wish to accept the money even though defendant had the money in court that day.

¶ 12    Defendant's testimony at the May 28 hearing was similar to her statements in her affidavit. She reiterated that she believed she was agreeing to "pay the money to stay, which was all that me [sic] and Ms. Antoinette [Moton] talked about face to face." Defendant testified that she asked Moton if she could pay the money, and Moton told her, "yeah, plus fees. No deal. If I have all the money, then she was going to take the money." She testified that Moton never told her that she had to move out, and Kahn never told defendant at the April 18 court date that the May 15 date was a "move-out date." Defendant testified that it was her understanding based on her conversations with Moton that when she came to court on April 18, she would be allowed to pay the money demanded and remain in the unit. She testified that she had two conversations with Moton regarding paying the rent, but Moton never told her "I had to get out." Defendant testified that Moton informed her that the case "went to go [sic] to the court.

- 4 -

It's nothing [*sic*] she can do about it. Because I was telling her that I didn't have a whole $700. She said, well, if you don't have all your money, then you can't stay. She said she want all of the money." She testified that she did not pay within the five-day notice period because she also received a paper instructing her to go to court and Moton told her that she "was sending it to the attorneys."

¶ 13    Regarding the April 18 court proceeding, defendant testified that Kahn "said something about no deals. I said does that mean having all my money. She said, yeah." Defendant testified that after they entered the courtroom and again discussed her case, defendant showed Kahn the TANF notice and counsel responded, "okay. That's fine. And something about she was going to give me until April 30 to pay the money. She asked me did I need a little more time. She said, okay. I'll give you to May the 15th to pay the money and that I had to sign the paper." Defendant testified that she did not intend to agree to pay and leave the apartment; she "would have never said that. I don't have any income so why would I pay money and still leave and have to go? *** I got [*sic*] two small children. *** Every time I talked to Antoinette [Moton], she never told me I had to go until that paper." Defendant testified that Kahn informed her that she could request a continuance to hire an attorney; however, defendant agreed to the April 18 order because defendant "thought I [defendant] was staying and paying the money."

¶ 14    Moton also testified at the May 28, 2013, hearing. She testified that on March 9, 2013, she sent a notice to defendant regarding the amount due of $189.09, and defendant then called her regarding her reduced income and the TANF notice. Moton testified that she never received the TANF notice despite defendant's assertion that she tried to give it to Moton's assistant and put it in the drop box. Moton explained that when a tenant provides information regarding a reduction in income, the new rental amount is effective the following month and a tenant must sign off on the changes to the rental amount, but defendant never followed up to make sure an adjustment was made. Moton testified that she received the TANF notice from defendant on March 21, and Moton reduced the rent to $17 per month effective April 2013. Moton admitted that she told defendant that she "can pay before the actual account went to the attorney. And once it went to the attorney, I told her that *** the attorney wasn't going to make any deals." She also conceded that she gave defendant a second opportunity to pay after the five-day notice expired. Moton admitted that she had previously told defendant that she would accept the past due rent and court costs before the case went to court. When defense counsel asked, "So you sent her a letter telling her you would accept past-due rent and the court costs and allow her to stay there, but then you told her no deals?" Moton responded, "Uh-huh."

¶ 15    During the hearing, plaintiff's attorney and the court questioned Moton regarding other alleged problems with defendant's tenancy. Moton testified that she was no longer willing to accept defendant's money because of other complaints she had received about defendant. Moton testified that incidents occurred before and after the five-day notice was sent to defendant. Over defense counsel's objection based on relevance, Moton testified:

"It started with like lots of noise complaints and, you know, asking Ms. King to, you know, turn her music down and so forth. And a lot of times when we went to the unit, Ms. King wasn't even at home. There was somebody else in her unit playing the loud music.

And, then, other incidents where one of her cousins got into it with someone else in the building. He got really, really upset and came to the office telling me how he was

going to kill somebody, and I'm like we can't have this type of activity on the property. ***

    And, then, tenant complaints about the guests that's [*sic*] coming to her unit. People afraid for their kids, their daughters because it's different men going in and out of the property."[3]

¶ 16    Moton testified that the complaints regarding defendant's cousin occurred after the five-day notice was sent. Moton indicated that after the cousin was barred from the building, he continued to enter the building anyway.

¶ 17    With regard to these complaints, defendant admitted that she had played loud music occasionally, but she denied that she had guests at night. She also explained that in January, her cousin and someone else (who either lived in the building or was related to someone who lived in the building) got into a fight at someone's house around the corner from the apartment building. Defendant was at the store at the time, but she then saw her cousin running around the corner. She brought her cousin into the apartment building to speak with Moton about it. Moton stated that her cousin had to leave and could not return. However, regarding the other incidents where Moton alleged that the cousin had entered the apartment complex, defendant testified that she did not know he came into the building, she did not let him in, and Moton never informed her that he had tried to reenter the building on other occasions.

¶ 18    The circuit court noted that plaintiff did not initially file the eviction proceeding based any problems with the tenancy other than nonpayment of rent. The court observed that defendant admitted to playing loud music in her apartment, but there was conflicting testimony regarding her cousin. The court held that "[t]he problem here simply is that there are problems with the unit and if not for that, this would have been a case I would have voided my usual rule and just vacated the judgment." However, given the problems with loud music and people in the unit, the court denied the motion to vacate the April 18, 2013, order of possession.

¶ 19    On June 4, 2013, defendant filed a motion to reconsider, which she later withdrew. Defendant filed a notice of appeal on June 27, 2013, from the April 18 and May 28, 2013, orders. Defendant also moved to stay enforcement of the order of possession pending appeal. The circuit court granted a stay until August 15, 2013, at which point it entered an order denying without prejudice defendant's motion to stay pending appeal on grounds that the motion should be presented to this court instead. On September 5, 2013, this court granted defendant's emergency motion to stay enforcement of the order of possession and granted defendant's motion for use and occupancy pending appeal on condition that she pay monthly rent during the pendency of this appeal.

¶ 20                         ANALYSIS

¶ 21    Initially, plaintiff asserts that defendant failed to provide a sufficient record to enable review of her claims because she did not provide a transcript of the court proceeding on April 18, 2013. "[T]he appellant is required to provide the reviewing court with a record sufficient to support his or her claims of error ***." *In re Marriage of Abu-Hashim*, 2014 IL App (1st) 122997, ¶ 15. While the record does not contain a transcript of the April 18, 2013, proceeding,

---

[3]Moton provided two incident reports dated March 1, 2013. Defense counsel objected based on relevance as the case only involved nonpayment of rent and because she had never seen the reports before. The circuit court overruled the objection and indicated that the reports were relevant.

the record does contain the transcript of the May 28, 2013, hearing on defendant's motion to vacate, which is the subject of her appeal. That hearing contains the testimony of defendant and Moton, along with statements from the trial judge and plaintiff's counsel regarding the April 18 proceeding. In addition, the record contains defendant's affidavit regarding what occurred at the April 18 proceeding, along with other documents involved in this case such as the five-day notice and the TANF letter. The transcript of April 18 was not provided to the trial court in reviewing defendant's motion to vacate. We find that the April 18 transcript is not needed to review defendant's claims and the record is sufficient to permit review. *Id.* However, any "doubts and deficiencies arising from an insufficient record will be construed against" defendant. *Id.*

¶ 22    On appeal, defendant contends that the April 18, 2013, order should be vacated because there was no "meeting of the minds" by the parties as defendant believed she was agreeing to pay the overdue amounts and retain possession. She asserts that she diligently attempted to inform plaintiff of her reduction in income and then subsequently diligently challenged the April 18 order upon realizing that it did not reflect the bargain she thought she had struck. She emphasizes the disparity in the parties' respective bargaining positions given that she represented herself at the April 18, 2013, court proceeding while plaintiff had an attorney. She maintains that she has meritorious defenses to eviction because she did not owe the amounts claimed in the five-day notice and because the notice was defective. Defendant argues that she would suffer a severe penalty if the eviction order was carried out as she would lose her federal housing assistance and this would likely result in homelessness. As such, defendant asserts that the order was unconscionable considering the disparity of bargaining power, the fact that the order was wholly one-sided, and her meritorious defenses to eviction.

¶ 23    Defendant moved to vacate the agreed order pursuant to section 2-1301 of the Code, which provides in pertinent part that a court "may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable." 735 ILCS 5/2-1301(e) (West 2012). Under section 2-1301(e), "the litigant need not necessarily show the existence of a meritorious defense and a reasonable excuse for not having timely asserted such defense. [Citation.] Rather, the overriding consideration is simply whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits." *In re Haley D.*, 2011 IL 110886, ¶ 57. "In making this assessment, a court should consider all events leading up to the judgment. 'What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome. [Citation.]' " *Id.* ¶ 69 (quoting *Mann v. The Upjohn Co.*, 324 Ill. App. 3d 367, 377 (2001)). "Whether substantial justice is being achieved by vacating a judgment or order is not subject to precise definition, but relevant considerations include diligence or the lack thereof, the existence of a meritorious defense, the severity of the penalty resulting from the order or judgment, and the relative hardships on the parties from granting or denying vacatur." *Jackson v. Bailey*, 384 Ill. App. 3d 546, 549 (2008) (citing *Mann*, 324 Ill. App. 3d at 377).

¶ 24    We note that, while defendant discusses and relies on section 2-1401 and *In re Marriage of Rolseth*, 389 Ill. App. 3d 969 (2009), and the cases cited therein on appeal, her motion to vacate was made under section 2-1301 in the circuit court, which governs vacatur of default orders and final orders less than 30 days old. It is correct that agreed orders may be modified or vacated pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2012)), which

allows for relief from final orders after 30 days but less than 2 years after entry. *In re Marriage of Rolseth*, 389 Ill. App. 3d at 972; *Thompson v. IFA, Inc.*, 181 Ill. App. 3d 293, 297 (1989). The Second District in *In re Marriage of Rolseth* observed that the precise nature of the exceptions to vacating or modifying agreed orders has been subject to some dispute in the case law and that, with the enactment of section 72 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, ¶ 72), which is currently section 2-1401 of the Code, "challenges to agreed orders were to be judged 'by the broad equitable considerations which govern all Section 72 petitions.' " *In re Marriage of Rolseth*, 389 Ill. App. 3d at 972 (quoting *City of Des Plaines v. Scientific Machinery Movers, Inc.*, 9 Ill. App. 3d 438, 443 (1972)). As such, a successful section 2-1401 petition will "affirmatively set forth specific factual allegations supporting each of the following elements: (1) a meritorious claim or defense; (2) due diligence in presenting the claim in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Thompson*, 181 Ill. App. 3d at 298-99.

¶ 25        However, in the present case, defendant filed the motion to vacate within 30 days of the entry of the April 18 agreed order. We note that *In re Marriage of Rolseth* relied on cases such as *Thompson*, which involved circumstances where a motion to vacate an agreed order was made after 30 days had passed, and therefore is distinguishable from the present circumstances. *Thompson*, 181 Ill. App. 3d at 295. See also *City of Des Plaines*, 9 Ill. App. 3d at 441 (petition to vacate filed almost one year after consent decree was entered). As *Rolseth* relied on cases involving petitions brought after the passing of 30 days, we respectfully disagree that it necessarily follows that motions to vacate an agreed order brought within 30 days must be judged pursuant to a rule intended to govern motions brought after 30 days. Section 2-1301, as described above, presents a much lower hurdle for the movant to overcome, that being a showing that substantial justice was not achieved. This is the movant's "reward" for filing the motion in a more timely manner than if it was brought under section 2-1401. It is well recognized that motions to vacate under section 2-1301 are routinely granted in order to achieve substantial justice. We find that this is the standard that should apply to motions to vacate agreed orders brought within 30 days. As a result, we respectfully decline to follow *Rolseth*. Put another way, we see no reason to impose the stricter section 2-1401 standard upon a movant who has filed a timely motion to vacate pursuant to section 2-1301 simply because the subject of the motion is an agreed order. We find that the case law upon which *Rolseth* is based does not support such a conclusion. Nevertheless, as noted above, the question of whether substantial justice was achieved still requires an analysis of several considerations, including "diligence or the lack thereof, the existence of a meritorious defense, the severity of the penalty resulting from the order or judgment, and the relative hardships on the parties from granting or denying vacatur." *Jackson*, 384 Ill. App. 3d at 549.

¶ 26        As a decision whether to grant a motion under section 2-1301 is discretionary (*In re Haley D.*, 2011 IL 110886, ¶ 69), we review a circuit court's ruling on a motion under this section for an abuse of discretion (*Standard Bank & Trust Co. v. Madonia*, 2011 IL App (1st) 103516, ¶ 8). An abuse of discretion occurs when the circuit court " 'acts arbitrarily without the employment of conscientious judgment or if its decision exceeds the bounds of reason and ignores principles of law such that substantial prejudice has resulted.' " *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 26 (quoting *Marren Builders, Inc. v. Lampert*, 307 Ill. App. 3d 937, 941 (1999)).

¶ 27    With respect to defendant's assertion that the April 18 order should be vacated because there was no "meeting of the minds," we note that as an agreed order is considered to be a contract between the parties, "its construction is governed by principles of contract law." *Elliott v. LRSL Enterprises, Inc.*, 226 Ill. App. 3d 724, 728-29 (1992). The primary purpose of contract interpretation is to effectuate the intent of the parties. *Id.* at 729. "[T]he order must be interpreted in its entirety, considering all facts and circumstances surrounding its execution, as well as all pleadings and motions from which it emanates." *Id.* We review *de novo* the construction, interpretation, and effect of a contract. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 129 (2005).

¶ 28    As agreed orders are effectively the parties' private contractual agreement, they are "generally binding on the parties and cannot be amended or varied without the consent of each party." *In re Marriage of Rolseth*, 389 Ill. App. 3d at 971. However, exceptions arise where one party shows "fraudulent misrepresentation or coercion in the making of the agreement, the incompetence of one of the parties, gross disparity in the position or capacity of the parties, errors of law apparent on the face of the record, or newly discovered evidence." *City of Marseilles v. Radke*, 287 Ill. App. 3d 757, 760 (1997). See also *In re Marriage of Rolseth*, 389 Ill. App. 3d at 971-72 (same); *Thompson*, 181 Ill. App. 3d at 296 (same). "Settlement agreements are binding only if there is an offer, an acceptance, and a meeting of the minds as to the terms of the agreement." *Sementa v. Tylman*, 230 Ill. App. 3d 701, 705 (1992). Further, " '[i]n order to be unconscionable, a contract provision must be both procedurally and substantively unconscionable.' " *Aliaga Medical Center, S.C. v. Harris Bank N.A.*, 2014 IL App (1st) 133645, ¶ 27 (quoting *Kinkel v. Cingular Wireless, LLC*, 357 Ill. App. 3d 556, 562 (2005)). A contract is considered procedurally unconscionable " 'if some impropriety in the formation of the contract leaves a party with no meaningful choice in the matter' " and it is substantively unconscionable " 'if it is overly harsh or one-sided.' " *Aliaga Medical Center*, 2014 IL App (1st) 133645, ¶ 27 (quoting *Kinkel*, 357 Ill. App. 3d at 562).

¶ 29    Plaintiff maintains that an agreed order in a forcible detainer action may be vacated based only on fraud. Plaintiff primarily relies on two cases: *Sitelis v. Mouhelis*, 13 Ill. App. 2d 131 (1957), and *Watson v. Kenores*, 338 Ill. App. 202 (1949). However, these cases were decided over 50 years ago and are abstract opinions. We do not agree that these cases are precedential. See *Schusse v. Pace Suburban Bus Division of the Regional Transportation Authority*, 334 Ill. App. 3d 960, 968 n.1 (2002) (noting that the defendant improperly cited an abstract opinion as precedent, a practice "consistently *** condemned by courts of review," and finding that "an abstract cannot be relied upon as precedent").

¶ 30    On the other hand, defendant urges this court to look to a case from the New Jersey Supreme Court, *Community Realty Management, Inc. v. Harris*, 714 A.2d 282 (N.J. 1998). The defendant in *Harris* lived in federally subsidized housing and faced eviction proceedings for nonpayment of rent, and she was not represented by counsel when she entered into a consent agreement in which she paid the back rent and agreed to vacate the apartment. *Harris*, 714 A.2d at 285-86. Upon realizing that she would be forced to leave, defendant obtained counsel and sought to vacate the consent judgment for possession. *Id.* at 286. The defendant testified that she told the plaintiff's attorney at the initial court date that she did not have the money and he gave her 11 days to pay it; when she returned to pay it, she then signed the consent order after speaking with a paralegal employed by plaintiff's attorney. *Id.* at 286-87. The defendant testified that based on the conversation with the paralegal, she believed she

would be able to remain in the apartment if she met certain conditions after a six-month stay period, but the paralegal's testimony contradicted this. *Id.* at 287. Although the plaintiff conceded that the defendant's expectation that paying the amounts demanded would avoid eviction were consistent with general practices, it nonetheless sought enforcement of the warrant for removal "because of an undefined problem with defendant's son." *Id.* at 292. On appeal, the court held that the defendant was entitled to relief from the agreed order for possession given the evidence that the defendant did not have a "knowing and intelligent understanding of what transpired" as the defendant reasonably believed she would remain in possession if she paid the amounts demanded by a certain deadline, and she did not understand what a "hardship stay," "judgment for possession," and a "warrant for removal" were. *Id.* at 290-92.

¶ 31 "Although the decisions of foreign courts are not binding, 'the use of foreign decisions as persuasive authority is appropriate where Illinois authority on point is lacking or absent.' " *Rhone v. First American Title Insurance Co*., 401 Ill. App. 3d 802, 812 (2010) (quoting *Carroll v. Curry*, 392 Ill. App. 3d 511, 517 (2009)). Although *Harris* is not precedential, it bears obvious similarities to the instant case. Like in *Harris*, defendant in the present case lives in federally subsidized housing and faces eviction for nonpayment of rent, and she appeared at the court hearing regarding the eviction complaint without the assistance of an attorney. Like the defendant in *Harris*, the defendant reasonably believed, based on the evidence presented at the hearing on her motion to vacate the agreed order, that she was agreeing to pay the amounts demanded while retaining possession of the apartment. The record reflects that Moton admitted in her testimony that before the April 18 court date, she told defendant that she could pay the amounts due and remain in the apartment. According to defendant, when she came to court and spoke with plaintiff's attorney, she informed the attorney that she had "worked it out with the manager already." Although defendant indicated that the attorney told her there were "no deals," when defendant asked the attorney whether this meant that she must present all of the money owed, the attorney responded, "yeah." There is nothing in this exchange which further clarified that defendant was also agreeing to surrender possession of the apartment. It also does not appear from the record available that when her case was called and discussed before the court, she was informed that she was agreeing to vacate the premises in addition to paying the rent and costs. She indicated that she did not think she needed an attorney because she believed she was agreeing to pay the amounts due and remain in the apartment. Considering defendant's testimony, Moton's testimony, and the statements of plaintiff's attorney, it is understandable that defendant was under the impression that she had agreed she could remain in the apartment by paying the amounts demanded. Whether defendant was agreeing to pay the rent and costs while retaining her tenancy was a material feature of the parties' agreed order. See *John Burns Construction Co. v. Interlake, Inc.*, 105 Ill. App. 3d 19, 25 (1982) (a contract may be rescinded based on mistake where it is shown that the mistake related to a "material feature of the contract," the mistake would entail "such grave consequence that enforcement of the contract would be unconscionable," that the mistake occurred despite exercising reasonable care, and that "the other party can be placed in *statu*[*s*] *quo*").

¶ 32 The record also supports that defendant exercised diligence in attempting to inform plaintiff of her change in income and in challenging the April 18 order. *Jackson*, 384 Ill. App. 3d at 549. According to defendant's affidavit and testimony, she attempted to inform plaintiff

- 10 -

of her change of income promptly after she received the TANF notice in late January or early February of 2013. Sandy did not take the notice when defendant presented it to her. And for reasons not clear in the record, Moton apparently did not receive the copy of the TANF notice that defendant placed in the office drop box later that same day. Defendant then obtained another copy of the TANF notice and provided it to Moton. The record also reflects that when defendant spoke with Moton a few days after the April 18 court date and realized that the April 18 order had actually given plaintiff possession of the apartment in addition to ordering her to pay the overdue rent and costs, defendant diligently attempted to timely challenge the order by obtaining counsel and filing the motion to vacate within 30 days.

¶ 33    Moreover, we also consider the relative hardships of the parties and the severity of the penalty if the agreed order is allowed to stand. *Jackson*, 384 Ill. App. 3d at 549. Defendant argues that her federal housing subsidy is tied to the particular apartment and she would lose it if evicted, and eviction would have grave consequences for her. On the other hand, if the motion to vacate were granted, plaintiff would continue to receive rent at the applicable rate based on a percentage of defendant's income while proceeding to a trial on the merits in this case. Defendant was ready and able to pay the amounts demanded by plaintiff. In light of the severity of the penalty that would result from affirming the trial court's order denying defendant's motion to vacate, we find that the relative hardships in this case favor defendant. *Id.*

¶ 34    In addition, defendant asserts on appeal that she has two viable defenses to the eviction action. Defendant argues (1) that she did not owe the amounts claimed in the notice because of the change in income she experienced, and (2) that the five-day notice was defective because service was made only by delivering it to her personally. We disagree with plaintiff's argument that by agreeing to the order, defendant waived any defenses to it, as defendant is challenging the validity of the very same order.

¶ 35    Section 886.124(b) of the federal regulations governing section 8 housing assistance payments provides that a family receiving housing assistance "must comply with provisions in its lease regarding interim reporting of changes in income. If the owner receives information concerning a change in the family's income *** between regularly scheduled reexaminations, the owner must consult with the family and make any adjustments determined to be appropriate." 24 C.F.R. § 886.124(b) (2012). That the regulations required plaintiff to adjust defendant's rent when her income was reduced was also supported by Moton's testimony when she is notified that a tenant's income changes, the rent is adjusted in the month following the notice. As previously stated, defendant testified that she attempted to give the TANF notice to plaintiff shortly after she received it in January or February of 2013, but Sandy would not accept it and defendant then placed it in the drop box. Moton claimed she never received the letter until defendant obtained a second copy and brought it to her on March 21, but this does not necessarily negate defendant's testimony that she provided the letter much earlier. Although plaintiff asserts that defendant's testimony was vague regarding the exact date she first provided notice, we note that section 2-1301 of the Code does not require defendant to affirmatively prove a defense. Rather, whether meritorious defenses exist is one of several relevant considerations in determining whether substantial justice would be achieved by vacating the order. *Jackson*, 384 Ill. App. 3d at 549.

¶ 36    Defendant also asserts that plaintiff's personal service of the five-day notice failed to satisfy the service requirements under the applicable federal regulations. Section 886.128 (24

C.F.R. § 886.128 (2012)) provides that section 247.1 (24 C.F.R. § 247.1 *et seq.* (2012)) applies to the termination and eviction of a tenant receiving assistance under this section. Section 247.4(a) provides that a decision to terminate a tenancy:

> "shall: (1) State that the tenancy is terminated on a date specified therein; (2) state the reasons for the landlord's action with enough specificity so as to enable the tenant to prepare a defense; (3) advise the tenant that if he or she remains in the leased unit on the date specified for termination, the landlord may seek to enforce the termination only by bringing a judicial action, at which time the tenant may present a defense; and (4) be served on the tenant in the manner prescribed by paragraph (b) of this section." 24 C.F.R. § 247.4(a) (2012).

¶ 37    Further, this section provides that the notice required under paragraph (a):

> "shall be accomplished by: (1) Sending a letter by first class mail, properly stamped and addressed, to the tenant at his or her address at the project, with a proper return address, and (2) serving a copy of the notice on any adult person answering the door at the leased dwelling unit, or if no adult responds, by placing the notice under or through the door, if possible, or else by affixing the notice to the door. *Service shall not be deemed effective until both notices provided for herein have been accomplished.* The date on which the notice shall be deemed to be received by the tenant shall be the date on which the first class letter provided for in this paragraph is mailed, or the date on which the notice provided for in this paragraph is properly given, whichever is later." (Emphasis added.) 24 C.F.R. § 247.4(b) (2012).

¶ 38    Defendant asserts that plaintiff failed to properly effectuate service as it only slipped the five-day notice under her door. The regulations make clear that service must be effectuated by first-class mail *and* personally served on an adult in the unit or slipped under the door if no adult answered the door. Plaintiff maintains that defendant has waived her notice argument as it was not presented in the trial court and she admitted that she received notice. However, section 247.4(f) directs that "[t]he failure of the tenant to object to the termination notice shall not constitute a waiver of his rights to thereafter contest the landlord's action in any judicial proceeding." 24 C.F.R. § 247.4(f) (2012).

¶ 39    While we are mindful that the standard of review in this case is an abuse discretion, all defendant seeks in this case is a trial on the merits. Given the facts of this case, we believe that substantial justice is best accomplished by vacating the April 18 order. *In re Haley D.*, 2011 IL 110886, ¶ 69; *Jackson*, 384 Ill. App. 3d at 549. The record supports that defendant misunderstood the terms of the order that she signed and that this misunderstanding was reasonable given Moton's statements before the court proceeding and what transpired during the proceeding. The record also supports that defendant diligently attempted to notify plaintiff of her change in income and later diligently attempted to contest the April 18 order upon realizing that the order granted plaintiff possession. Also of significance is the disparity in the parties' bargaining power given that defendant was not represented by an attorney and did not believe she needed one as she thought she was agreeing to "pay and stay." As noted, we are mindful of the relative hardships at stake. Moreover, under the law, there is a clear preference for disposing of issues based on the merits. *In re Application of the County Collector*, 343 Ill. App. 3d 363, 373 (2003). "The law prefers that controversies be determined according to the substantive rights of the parties" and the Code should be "liberally construed toward that end."

*In re Haley D.*, 2011 IL 110866, ¶ 69. Accordingly, we find that the circuit court abused its discretion in denying defendant's motion to vacate.

¶ 40    Defendant also raises a constitutional claim on appeal in arguing that her due process rights were violated because the circuit court based its decision on allegations which plaintiff failed to include in the five-day notice of termination or the complaint. Plaintiff makes no reply to this argument in its response brief.

¶ 41    "[D]ue process principles require that one cannot be deprived of property without adequate notice and an opportunity to defend." *In re Possession & Control of the Commissioner of Banks & Real Estate of Independent Trust Corp.*, 327 Ill. App. 3d 441, 466-67 (2001). Where an individual has a statutory entitlement to welfare benefits, he is entitled to adequate notice and an opportunity to be heard before those benefits are suspended. *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970). The notice must be "reasonably calculated *** to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" and it must also "reasonably *** convey the required information." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). In the context of federally assisted housing, courts have held that

> "state-created, federally-funded, locally administered housing authority had to provide the following before evicting a tenant:
>
> (1) timely and adequate notice detailing the reasons for a proposed termination, (2) an opportunity on the part of the tenant to confront and cross-examine adverse witnesses, (3) the right of a tenant to be represented by counsel, provided by him to delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination and generally to safeguard his interests, (4) a decision, based on evidence adduced at the hearing, in which the reasons for decision and the evidence relied on are set forth, and (5) an impartial decision maker." (Internal quotation marks omitted.) *Johnson v. Illinois Department of Public Aid*, 467 F.2d 1269, 1272 (7th Cir. 1972).

¶ 42    In *Johnson*, the court disagreed with the defendants' assertion "that tenancy in public housing is a privilege, not a right, and as such can be terminated at the will of the Authority, without regard to the tenants' constitutional rights." *Johnson*, 467 F.2d at 1273.[4]

¶ 43    As defendant notes, section 247.3 required plaintiff to provide notice of the reasons for termination of tenancy in accordance with section 247.4. 24 C.F.R. § 247.3(a), (c) (2012). A tenant's conduct "cannot be deemed other good cause under § 247.3(a)(4) unless the landlord has given the tenant prior notice that said conduct shall henceforth constitute a basis for termination of occupancy," and the notice must be served as set forth in section 247.4(b). 24 C.F.R. § 247.3(b) (2012). In turn, section 247.4(a) requires that the termination notice be in

---

[4]See also *Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268 (1969) (finding that a HUD circular regarding eviction of a tenant requiring notice of the reasons for the eviction and an opportunity to reply must be followed by public housing project); *Glover v. Housing Authority of the City of Bessemer*, 444 F.2d 158, 161 (5th Cir. 1971) (observing that a HUD regulation requiring a hearing before an impartial official or panel was based on *Goldberg v. Kelly*); *Chicago Housing Authority v. Harris*, 49 Ill. 2d 274 (1971) (concluding that HUD circulars were valid and applicable and that housing authorities are required to comply with them).

writing and state with sufficient specificity "the reasons for the landlord's action *** so as to enable the tenant to prepare a defense." 24 C.F.R. § 247.4(a) (2012).

¶ 44    Although defendant raises this issue as a separate justification for vacating the April 18 order, we have already determined that vacatur of the order is appropriate. We further observe, however, that we are troubled by the trial court's reliance on allegations that were not set forth in the initial five-day notice to defendant or in the complaint. The five-day notice and complaint only included the nonpayment of rent allegation. The other allegations involving noise complaints, defendant's cousin, and inappropriate guests in her apartment at night were not included. Plaintiff did not file a response to defendant's motion to vacate, but brought these allegations up at the hearing on defendant's motion. As such, defendant was not provided with advance notice that these allegations would serve as a basis for eviction and, consequently, she was not provided an opportunity to prepare a defense to these accusations before the hearing. Her attorney repeatedly objected to this evidence at the hearing and informed the court that she had not received a copy of any notices sent to defendant regarding the incidents.[5] In deciding to deny defendant's motion to vacate, the circuit court stated:

> "Ordinarily what we do in these cases is if there's an agreement, ordinarily–again, that's in the ordinary case–we just accept it and that's it.
>
> The reason I wanted to hear more here was to see really the reasoning why the money isn't accepted, and I realize they didn't proceed originally on the count of, you know, problems with the unit. But, you know, the reality is is that when someone plays loud music, you know, people are entitled to a night's sleep, and no one should be forced to listen late at night to people's music. I think the defendant was very candid that she did do that.
>
> * * *
>
> The problem here simply is that there are problems with the unit and if not for that, this would have been a case I would have voided my usual rule and just vacated the judgment. But I think here given the fact that there are obviously problems with loud music, with certain people in the unit, I think I'm going to deny the motion to vacate the possession order."

¶ 45    Thus, it is clear that the circuit court based its decision on these other allegations, which were not contained in the notice or the complaint and about which defendant had no prior notice or opportunity to prepare a defense. This issue provides additional support for our conclusion that the decision to deny defendant's motion to vacate did not accomplish substantial justice in this case and was an abuse of discretion.

---

[5]The circuit court indicated that evidence of these other complaints was relevant and would be allowed under Illinois Supreme Court Rule 286(b) (eff. Aug. 1, 1992), which provides that in "any small claims case, the court may *** adjudicate the dispute at an informal hearing" and that "all relevant evidence shall be admissible." However, " 'small claim[s]' " are defined in Rule 281 "only as including 'civil action[s] based on either tort or contract for money not in excess of $10,000, exclusive of interest and costs, or for the collection of taxes not in excess of that amount.' " *Stone Street Partners, LLC v. City of Chicago Department of Administrative Hearings*, 2014 IL App (1st) 123654, ¶ 20 (quoting Ill. S. Ct. R. 281 (eff. Jan. 1, 2006)). The instant case involved a forcible detainer action for possession.

¶ 46                                    CONCLUSION

¶ 47         For the reasons stated above, we reverse the circuit court's order denying defendant's motion to vacate the April 18 order.

¶ 48         Reversed and remanded.