NOTICE
Decision filed 08/15/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 241293-U

NO. 5-24-1293

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| RACHEL E. CRUTHIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Marion County. |
| | ) | |
| v. | ) | No. 24-OP-48 |
| | ) | |
| CYPRESS A. HOLT, | ) | Honorable |
| | ) | Douglas L. Jarman, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Presiding Justice McHaney and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The respondent's agreement to a plenary order of protection was valid where her allegations, taken as true, were insufficient to establish that she agreed to the order under duress. The plenary order of protection was proper where it protected the respondent's stepdaughter, a family or household member of the respondent, and other people residing in the same household as the respondent's stepdaughter.

¶ 2    The respondent, Cypress A. Holt, brings this *pro se* appeal of a plenary order of protection entered against her in favor of the petitioner, Rachel E. Cruthis. Although the order was entered by agreement, Cypress filed motions asking the trial court to vacate the order, which the court denied. On appeal, Cypress contends that (1) she only agreed to the order due to intimidation from Rachel's attorney and (2) Rachel failed to satisfy the statutory requirements for an order of protection because the parties do not have any type of relationship that would bring them within

1

the provisions of the Illinois Domestic Violence Act of 1986 (750 ILCS 60/101 *et seq.* (West 2024)). For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On March 8, 2024, Rachel filed petitions for orders of protection against her former husband, Zachary Holt, and his then-current wife, Cypress. The allegations involved Rachel's daughter with Zachary, O.L.H. In the petition against Cypress, Rachel alleged that Cypress had concealed O.L.H.'s whereabouts during Zachary's parenting time so that Rachel was unable to contact O.L.H. Rachel further alleged that she "heard from a family member" that Cypress and Zachary gave Zachary's mother permission to pick up O.L.H. from school, something they were not authorized to do. Rachel noted that she obtained an order of protection against Zachary that morning, and she alleged that "the family said that [Cypress] will freak out, and [Rachel] needed to hide [her] child as she may try to abduct her." Finally, she alleged that she had been told that Cypress had possession of Zachary's phone, was preventing her from having any contact with him, and was harassing her while "posing as" Zachary. The trial court heard testimony and granted an emergency order of protection against Cypress that day, which was subsequently extended.

¶ 5     On May 3, 2024, the court held a hearing on Rachel's requests for plenary orders of protection against both Zachary and Cypress.[1] Rachel and Zachary each appeared with counsel, while Cypress appeared *pro se*. Zachary's attorney informed the court that the parties were close to reaching an agreement. Rachel's attorney then stated, "I spoke with [Cypress], and she will agree to the order of protection being entered for a year, and I will need to prepare the order." The court asked Cypress if that was correct, to which she replied, "Yes, Your Honor." The court entered

---

[1]Although the court held a joint hearing on the two petitions, they were docketed as separate cases and were not consolidated. The petition against Zachary is not part of this appeal.

an agreed plenary order of protection against Cypress that day. The order protected Rachel, her husband, and O.L.H.

¶ 6    On May 31, 2024, Cypress filed a *pro se* petition to modify or vacate the order of protection. In an attached hand-written document, she alleged that on the day of the hearing, Rachel's attorney, Jeron Balazi, intimidated her by stating that she already had an order of protection against Cypress "with nothing to show" and threatened to bring up Cypress's "other cases that [were] ongoing." She further alleged that Balazi lied when she "said only a year."

¶ 7    On June 27, 2024, the court held a hearing on Cypress's motion to vacate the order of protection. The trial judge indicated that he had difficulty reading Cypress's hand-written statement and asked her to state her reasons for wanting to vacate the order. Cypress responded, "Whenever you told me to talk with the attorney outside in the hallway, I was not very happy with what she had to say. Basically, threatening me." The following exchange then occurred:

"MS. BALAZI [counsel for Rachel]: I also struggled reading this, but I believed what it said is that I threatened to use her other cases against her. And all I did was simply advise her of her—she had a criminal case pending that her testifying [in] the case might compromise her right not to testify against herself in the criminal case. And then she agreed to the one-year order Then we—

MS. HOLT: Not true.

MS. BALAZI: —went in front of Your Honor. And this shouldn't be vacated. It was an agreement. There was no duress. No coercion."

In response, Cypress explained, "She wanted to tell me see how easily it is that I can get an OP against you and have nothing."

3

¶ 8    The trial court indicated that it would deny Cypress's motion, explaining, "[The] plenary order was entered by agreement. That's not the proper procedure for vacating." The court further noted that Cypress had "no basis" for her request. The court denied the motion in a docket entry that day.

¶ 9    On July 22, 2024, Cypress filed a motion to reconsider. She asserted that (1) Balazi "took advantage of [her] situation to intimidate [her] into agreeing" to the plenary order of protection; (2) the requirements for an order of protection were not satisfied where the parties had never been in a relationship and where they now lived in different counties and had not "had any conflicts[,] verbal or otherwise[,] in years"; and (3) the trial judge did not hold a fair and impartial hearing on her petition to vacate.

¶ 10    On November 19, 2024, the court held a hearing on Cypress's motion to reconsider. Cypress reiterated her assertion that Balazi had intimidated her. In addition, she argued that most of the allegations in Rachel's petition were allegations against her husband, Zachary, and that many of the allegations that involved her were based on hearsay. Balazi emphasized that the order of protection was an agreed order and noted that Cypress had already filed a motion to vacate, which the court had denied. She argued, "If [Cypress] didn't want to agree to it, she shouldn't have agreed to it, but she did. It's resolved." In response, Cypress alleged that Balazi intimidated her by wanting to talk about irrelevant matters and by telling Cypress that orders of protection "are getting passed out like Tic Tacs."

¶ 11    The court asked Balazi if any other cases were pending involving the same parties. Balazi indicated that there was a parenting case pending involving Zachary and Rachel, but that case did not involve Cypress. The court then asked Cypress if any circumstances had changed since the

4

order was entered. Cypress replied, "No, sir. Besides—I'm not with my husband at the moment. We are in the middle of a divorce. So, I would never be a renderence [*sic*] when it comes to it."

¶ 12    Following the hearing, the court denied Cypress's motion to reconsider in a docket entry, stating, "For reasons stated at the hearing to vacate, the Motion to Reconsider is denied." This timely *pro se* appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14    Rachel did not filed a brief in this matter. Regardless, we find the issues presented are simple enough that we may consider the appeal without the aid of an appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Co.*, 63 Ill. 2d 128, 133 (1976).

¶ 15    First, however, we must determine whether we have appellate jurisdiction. See *Mund v. Brown*, 393 Ill. App. 3d 994, 996 (2009). Generally, Illinois courts do not have jurisdiction to consider moot questions, render advisory decisions, or address issues where the result will not be affected by the decision. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). Because the order of protection at issue expired on May 2, 2025, while this appeal was pending, the questions raised by Cypress are now moot. *In re Rita P.*, 2014 IL 115798, ¶ 29. The question is therefore whether this case falls within an exception to the mootness doctrine. See *Alfred H.H.*, 233 Ill. 2d at 351.

¶ 16    There are three recognized exceptions to the mootness doctrine—the public interest exception, the capable of repetition yet evading review exception, and the collateral consequences exception. See *id.* at 355-61. The public interest exception applies when (1) the case involves issues of a public nature, (2) there is a need for an authoritative determination to guide public officers, and (3) the questions are likely to recur in the future. *Id.* at 355. This case raises questions concerning the statutory requirements for an order of protection under the Domestic Violence Act. This court has recognized that the Domestic Violence Act "addresses issues of great public interest,

5

and its purposes can only be accomplished if the courts properly apply the statutory requirements." *Landmann v. Landmann*, 2019 IL App (5th) 180137, ¶ 12. Given the nature of the claims raised, we believe guidance in the application of the statutory requirements is necessary and useful. We also find that the questions raised in this appeal are likely to recur. We will therefore consider Cypress's claims under the public interest exception. See *Benjamin v. McKinnon*, 379 Ill. App. 3d 1013, 1020 (2008).

¶ 17 Before turning to the merits of Cypress's arguments, we note that neither Rachel's petition nor the order of protection clearly identifies either the Domestic Violence Act (750 ILCS 60/101 *et seq.* (West 2024)) or the Stalking No Contact Order Act (740 ILCS 21/1 *et seq.* (West 2024)) as the basis for the order. However, the parties appear to have proceeded under the assumption that the Domestic Violence Act applied.[2] We will do likewise.

¶ 18 Cypress first argues that the trial court erred in not vacating the order of protection because she agreed to the order under duress. We disagree.

¶ 19 The Domestic Violence Act does not contain any express provisions for vacating a plenary order of protection. However, section 224, which prescribes procedural mechanisms for requesting modifications of orders of protection, also provides that it "does not limit the means, otherwise available by law, for vacating or modifying orders of protection." 750 ILCS 60/224(f) (West 2024). Section 2-1301(e) of the Code of Civil Procedure provides a means by which any party may request that a trial court set aside or vacate "any final order or judgment" within 30 days. 735 ILCS 5/2-

---

[2]A provision in the order directing Cypress to stay away from the elementary school attended by O.L.H. indicated that the court made findings in accordance with a provision of the Domestic Violence Act (750 ILCS 60/214(b)(3)(B) (West 2024)), and, as noted, Cypress argued that Rachel failed to satisfy the statutory requirements because of the lack of relationship between the parties. While relief under the Domestic Violence Act is limited to family or household members (see *id.* §§ 201(a), 214(a)), the Stalking No Contact Order Act contains no similar limitation (see 740 ILCS 21/5 (West 2024) (in a statement of legislative purpose, noting that only 30% of stalking victims have been in intimate relationships with their stalkers)).

6

1301(e) (West 2024). Although Cypress's motion to vacate the order did not cite any statutory provision and was labeled as a motion to modify or vacate, the relief requested indicated that it was, in substance, a motion to vacate pursuant to this provision. See *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102 (2002) (determining the character of a motion by its substance rather than its label).

¶ 20     Generally, an agreed order is binding on the parties because it is, in effect, a contractual agreement between the parties. *McNulty v. McNulty*, 2022 IL App (1st) 201239, ¶ 41 (citing *Draper & Kramer, Inc. v. King*, 2014 IL App (1st) 132073, ¶ 28). However, section 2-1301(e) permits a court to vacate an agreed order where the order did not achieve substantial justice between the parties and where it would now be reasonable to require the nonmoving party to go to trial on the merits. See *id.* ¶ 43 (citing *Draper*, 2014 IL App (1st) 132073, ¶ 23).

¶ 21     The key question is whether the agreed order achieved substantial justice. *Id.* In making this determination, the trial court must consider all events leading to the entry of the order. *Id.* Although the moving party does not need to demonstrate the existence of a meritorious defense (*id.*), that is still a relevant factor to consider in determining whether vacating the order would result in substantial justice (*id.* ¶ 45). Other factors include (1) whether the moving party acted diligently in attempting to raise a meritorious defense and in pursuing the motion to vacate, (2) the severity of the penalty resulting from the order, and (3) the relative hardships to the parties from granting or denying the motion to vacate. *Id.* "Every motion to vacate must be considered on its own unique facts *** ." *Id.* ¶ 54. Ruling on a motion to vacate an order is a matter of discretion. *Id.* ¶ 42. We therefore review the trial court's decision for an abuse of discretion. *Id.*

¶ 22     Here, Cypress acted diligently in pursuing her motion to vacate 28 days after the plenary order of protection was entered. Another circumstance weighing in Cypress's favor was the

7

disparity in bargaining power between the parties where Rachel was represented by counsel while Cypress appeared *pro se*. See *id.* ¶ 53 (distinguishing *Draper* on this basis).

¶ 23    Other factors, however, weigh against Cypress's request to vacate the order. Cypress did not attempt to raise a defense until she filed a motion to reconsider the court's denial of her motion to vacate, thus demonstrating a lack of due diligence. Moreover, as we will explain later in this decision, the defense she eventually raised concerning the parties' lack of a relationship is not meritorious.

¶ 24    Most importantly, Cypress's coercion allegations were vague and conclusory. She alleged that Rachel's attorney, Balazi, "basically" threatened her by informing her that it would be easy to get an order of protection "with nothing" and orders of protections were "getting passed out like Tic Tacs." However, Cypress failed to explain how a statement that it would be easy to obtain an order of protection without sufficient evidence coerced her into effectively relieving Rachel of her burden of proof. She further alleged that Balazi threatened to bring her "other cases" into the matter. But, again, Cypress did not specify what she meant by "other cases" or how "other cases" could be used to coerce her. Balazi indicated at the hearing on the motion to vacate that there was a criminal case pending against Cypress at the time and that testifying in this matter might compromise her right to remain silent in the criminal case. We do not find the advising of this potential outcome raises to the level of coercion. Entering an agreed order gave Cypress the benefit of not testifying in this case, which could have possibly provided evidence that could be used against her in other cases, including dissolution proceedings with Zachary. For these reasons, we find no abuse of discretion in the court's decision to reject Cypress's argument.

¶ 25    Cypress next contends that the court erred in entering an order of protection because Rachel failed to meet the statutory requirements where the parties do not have a relationship that would

8

bring them within the pertinent provisions. Although not framed as such by Cypress, the question is whether Rachel is a person protected under the Domestic Violence Act.

¶ 26    We note that Cypress's agreement to the plenary order of protection arguably relieved Rachel of her obligation to prove any element under the Domestic Violence Act. However, we need not decide that question because we find that Rachel is a protected person under the Act.

¶ 27    The Domestic Violence Act protects "any person abused by a family or household member." 750 ILCS 60/201(a)(i) (West 2024). It also protects "any person residing or employed at a private home *** which is housing an abused family or household member." *Id.* § 201(a)(iv). A petition for an order of protection under the Domestic Violence Act may be filed only by certain individuals, including "a person who has been abused by a family or household member or by any person on behalf of a minor child *** who has been abused by a family or household member and who, because of age ***, cannot file the petition." *Id.* § 201(b)(i).

¶ 28    The statutory definition of "family or household members" includes stepchildren and people formerly related by marriage. *Id.* § 103(6). O.L.H., as Cypress's stepdaughter, fits within this definition. O.L.H. is therefore a person protected by the Domestic Violence Act. *Id.* § 201(a)(i). Cypress asserts, however, that Rachel is not a family or household member. We agree. However, Rachel and her husband are nevertheless protected under the Domestic Violence Act because they reside in the same home as O.L.H. *Id.* § 201(a)(iv). As such, all three of the people protected by the plenary order of protection were entitled to that remedy by the express statutory terms of the Domestic Violence Act. We find no error.

¶ 29                                III. CONCLUSION

¶ 30    For the foregoing reasons, we affirm the judgment of the circuit court.

9

¶ 31    Affirmed.