*In re* MARRIAGE OF WESLEY W. ROLSETH, Petitioner-Appellee, and SHEILA A. ROLSETH, n/k/a Sheila Craddock, Respondent-Appellant.

Second District   No. 2—08—1184

Opinion filed April 20, 2009.

K.O. Johnson, of Law Office of K.O. Johnson, of DeKalb, for appellant.

Daniel J. Kollias, of Law Offices of Daniel J. Kollias, P.C., of Winfield, for appellee.

JUSTICE O'MALLEY delivered the opinion of the court:

Respondent Sheila Rolseth appeals from the trial court's ruling granting petitioner Wesley Rolseth's petition to declare the nonexistence of a parent-child relationship between him and two of respondent's children for whom petitioner had been paying child support. For the reasons that follow, we affirm the judgment of the trial court.

The 1999 judgment dissolving the parties' marriage included a marital settlement agreement in which the parties agreed that they shared parentage of four children, and it provided that petitioner pay child support accordingly. However, on July 14, 2008, petitioner filed a petition to declare the nonexistence of a parent-child relationship with respect to two of the four children. In the petition, petitioner alleged that respondent intentionally and fraudulently misled him as to the parentage of the two children, who, according to paternity testing conducted in June 2008, were not petitioner's biological children. The

record contains no transcripts of any subsequent proceedings, but it does contain a July 28, 2008, agreed order signed by the parties. According to the text of the agreed order, after being "fully advised in the premises," the trial court ruled as follows on petitioner's petition:

"By admission of the parties in open court, and after reviewing all evidence including parentage test results, The Court finds that [petitioner] *is not* the father of [the two children mentioned in his petition]. To the extent that this Order conflicts with the Judgment of Dissolution of Marriage or any other prior order of Court, such prior orders are hereby vacated only to the extent that they evidence a finding of paternity, or obligation of support related to [the two children]." (Emphasis in original.)

The agreed order also included a finding that respondent had been personally served in open court that day with a summons related to the petition.

In August 2008, respondent filed a motion to vacate the agreed order. The motion argued, among other things, that the order was improper because it was not preceded by a proper summons and that respondent was not represented by counsel when she agreed to the order. The trial court denied respondent's motion with a written order, which noted that, during the July 28 hearing, "the court asked [respondent] if she wished to hire counsel and if she [was] asking for time to respond" but that respondent "replied in the negative." Respondent timely appeals.

■ Because respondent seeks to vacate an agreed order, we begin with the standards governing such requests. An agreed order, also termed a consent order or a consent decree (*Thompson v. IFA, Inc.*, 181 Ill. App. 3d 293, 296 (1989)), is not an adjudication of the parties' rights but, rather, a record of their private, contractual agreement (*In re M.M.D.*, 213 Ill. 2d 105, 114 (2004)). Once such an order has been entered, it is generally binding on the parties and cannot be amended or varied without the consent of each party. *M.M.D.*, 213 Ill. 2d at 114. Although there are exceptions to this rule, the precise nature of those exceptions has been the subject of some confusion in our case law. As the trial court noted in its written opinion, many cases state that agreed orders may be challenged with a showing that the agreement "resulted from fraudulent misrepresentation, coercion, incompetence of one of the parties, gross disparity in the parties' bargaining positions, *** newly discovered evidence, or where the contract is void as contrary to public policy." *E.g.*, *In re Marriage of Nienhouse*, 355 Ill. App. 3d 146, 151 (2004). However, other cases describe the exceptions as including only "coercion in the making of the agreement, gross disparity in the position or capacity of the parties," and a new excep-

tion for "errors of law apparent on the face of the record." *Engel v. Loyfman*, 383 Ill. App. 3d 191, 195 (2008), citing *Thompson*, 181 Ill. App. 3d at 296. Both lines of cases oversimplify the inquiry. At common law, agreed orders "could be collaterally attacked only through bills of review and were specifically immune from challenges by appeal or writ of error." *City of Des Plaines v. Scientific Machinery Movers, Inc.*, 9 Ill. App. 3d 438, 443 (1972). However, after the enactment of section 72 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 72), challenges to agreed orders were to be judged "by the broad equitable considerations which govern all Section 72 petitions." *City of Des Plaines*, 9 Ill. App. 3d at 443; see *Lubowsky v. Skokie Valley Community Hospital*, 79 Ill. App. 3d 909, 914 (1979) (citing *City of Des Plaines*). Section 72 of the Civil Practice Act survives today as section 2—1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1401 (West 2006)). *R.W. Sawant & Co. v. Allied Programs Corp.*, 111 Ill. 2d 304, 310 (1986) (noting that section 72 of the Civil Practice Act became section 2—1401 of the Code). Those cases that enumerate the types of arguments available to challenge an agreed order without referencing section 72 of the Civil Practice Act or section 2—1401 of the Code overlook this fundamental point. The statement in *Engel*, for example, traces to a misreading of *Lubowsky* as enumerating the types of challenges available, when *Lubowsky* actually listed the types of challenges historically accepted before noting that, under section 72 of the Civil Practice Act, " 'broad equitable considerations' " govern. *Lubowsky*, 79 Ill. App. 3d at 914, quoting *City of Des Plaines*, 9 Ill. App. 3d at 443; see *Engel*, 383 Ill. App. 3d at 195, citing *Thompson*, 181 Ill. App. 3d at 296 (incorrectly citing *Lubowsky* as enumerating limited types of challenges); see also *Burchett v. Goncher*, 235 Ill. App. 3d 1091, 1094-95 (1991), citing *Kandalepas v. Economou*, 191 Ill. App. 3d 51, 54 (1989), citing *Bundy v. Church League of America*, 125 Ill. App. 3d 800, 805 (1984), citing *In re Haber*, 99 Ill. App. 3d 306, 309 (1981) (same misreading of *Lubowsky*). To the extent those cases remove the test for upsetting agreed orders from the standards of equity embodied in section 2—1401, we depart from them. Instead, we follow the rule that agreed orders may be modified or vacated only upon a showing that meets the standard applied to section 2—1401 petitions, a standard that may or may not, depending on the circumstances, be met by a showing of one or several of the types of challenges enumerated in our case law.

■ The first alleged infirmity that respondent argues should mandate vacation of the July 28 agreed order is the fact that she was served with the summons associated with the July 28 hearing on the same day as the hearing. See 134 Ill. 2d R. 102(b) (summons of this

type "may not be served later than three days before the day for appearance"). First, we fail to see why the lack of time between service of the summons and the hearing on petitioner's petition should invalidate the agreed order, since, as the trial court noted, the same agreed order could have been filed even if petitioner had not filed his petition. See *In re Marriage of Nau*, 355 Ill. App. 3d 1081 (2005) (agreed order regarding custody and child support enforceable even though neither party had filed a petition to modify custody). That point aside, the trial court's written order indicates that respondent not only acquiesced in the hearing going forward but actually affirmatively declined the court's offer of additional time. The record thus very strongly indicates that respondent waived any objection based on Rule 102(b). Because respondent, as the appellant, bears the burden of providing an appellate record of proceedings sufficient to support a claim of error, any doubts that may arise from the incompleteness of the record must be resolved against her. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). Without a transcript of the July 28 hearing, we must accept the inference that respondent waived her objection before signing the agreed order.

Respondent next argues that the agreed order should be vacated because she signed it without the benefit of legal counsel. We reject this argument for the same reason we reject her first argument: the record indicates that respondent was offered an opportunity to obtain counsel and affirmatively waived it.

Finally, respondent argues that the agreed order should be vacated because the filing that preceded it—petitioner's petition to declare the nonexistence of a parent-child relationship—was a petition for relief from the original divorce judgment, under section 2—1401 of the Code but not filed within the two-year time limit provided in that section. Even assuming *arguendo* that the untimeliness of petitioner's petition could void the later agreed order, we disagree with respondent that petitioner's petition was untimely. Respondent directs us to the limitations on section 2—1401 petitions for relief from judgments, but petitioner's petition was actually a new action filed under section 7 of the Parentage Act of 1984 (Act) (750 ILCS 45/7 (West 2006)), which provides as follows:

> "An action to declare the non-existence of the parent and child relationship may be brought subsequent to an adjudication of paternity in any judgment by the man adjudicated to be the father *** if, as a result of [DNA] tests, it is discovered that the man *** is not the natural father of the child. *** If, as a result of the [DNA] tests, the plaintiff is determined not to be the father of the child, the adjudication of paternity and any orders regarding

custody, visitation, and future payments of support may be vacated." 750 ILCS 45/7(b—5) (West 2006).

The statute of limitations provides that "[a]n action to declare the non-existence of the parent and child relationship brought under [the above subsection] shall be barred if brought *** more than 2 years after the petitioner obtains actual knowledge of relevant facts," unless the child sooner reaches 18 years of age. 750 ILCS 45/8(a)(4) (West 2006). Petitioner here alleged in his petition that, due to respondent's concealment of the truth, he did not obtain any knowledge that would lead him to question his paternity of the two children until less than two years prior to his filing the petition. Because we must construe the gaps in the record against respondent, we infer from her signing the agreed order, which referred to her "admissions in open court" as establishing petitioner's lack of paternity, that she admitted the truth of all the relevant portions of the petition, including the portion stating that petitioner had only recently gained knowledge of facts indicating he was not the children's father.[1] Accordingly, even assuming that the untimeliness of petitioner's petition could operate to void the parties' agreed order, we hold that the order should not be vacated here, because the petition was timely.

For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

Affirmed.

BOWMAN and SCHOSTOK, JJ., concur.

---

[1] Among respondent's filings challenging the agreed order was an affidavit that disputed petitioner's claim regarding the timing of his learning that he was not the father of the two children. The affidavit asserted that the parties discussed the children's paternity at a much earlier date. However, this factual assertion is one that respondent could have made before entry of the agreed order, and it is therefore not the type of new factual matter that can support vacation of an agreed order. See *In re Marriage of Klebs*, 196 Ill. App. 3d 472, 480-81 (1990) (a party seeking to vacate a judgment under section 2—1401 of the Code must show that the facts entitling her to relief "could not reasonably have been disclosed at or prior to the entry of judgment").