2020 IL App (2d) 200070-U
No. 2-20-0070
Order filed February 3, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CITY OF ELGIN, an Illinois Municipal Corporation, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CH-846 |
| ELGIN MEMORY CARE, LLC, | ) ) | |
| Defendant-Appellant | ) ) | |
| (Mace Iron Works, Inc., Accurate Housing Systems, Inc., Global Builders, Inc., and Elgin Memory Care Property Owners Association, Inc., Defendants). | ) ) ) ) ) | Honorable Kevin T. Busch, Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Hudson concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court did not abuse its discretion in denying the defendant's motion for a temporary restraining order because the defendant failed to raise a fair question as to the likelihood of success on the merits of its claims.

¶ 2   On September 21, 2017, the plaintiff, City of Elgin, filed a complaint against the defendants, Elgin Memory Care, LLC (EMC), Mace Iron Works, Inc., Accurate Housing Systems, Inc., Global Builders, Inc., and Elgin Memory Care Property Owners Association, Inc.  The City

sought an order to demolish improvements on property owned by EMC in Elgin. In May 2018, the parties reached an agreement on the issue, requiring EMC to take certain actions by June 15, 2019. EMC was unable to comply with the terms of the agreement. On January 13, 2020, EMC filed a motion for a temporary restraining order (TRO) and preliminary injunction to prevent the City from demolishing the improvements on its property. On January 22, 2020, the trial court denied EMC's motion for TRO. EMC appeals from this order. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In August 2015, EMC was issued a building permit to construct a proposed 69,000-square-foot nursing and personal care facility on a parcel of land located at 3271 U.S. Highway 20 in Elgin. The permit expired on April 27, 2016. On June 20, 2016, a permit extension was approved with said extension expiring on December 21, 2016. At some point during this time frame, a general contractor, Global Builders, entered a construction agreement with EMC and commenced construction on the project.

¶ 5        On September 23, 2016, Global Builders filed a complaint against EMC for breach of contract and to foreclose its mechanic's lien on the subject property. That case was docketed in Kane County as case No. 16-CH-964. The complaint indicated that Global Builders had entered into a construction agreement with EMC. Global Builders had completed some construction on the subject property and EMC owed Global Builders over $2 million dollars. The record indicates that a concrete slab was poured, utilities were brought to the site, and framing and partial sheathing of the exterior and interior walls and the roof of the structure had been completed. The record indicates that additional parties were named as counter-plaintiffs to the mechanic's lien claim: Mace Iron Works and Accurate Housing Systems.

¶ 6    EMC failed to complete construction of the proposed facility by the time the permit expired in December 2016.  On September 21, 2017, the City filed a two-count verified complaint against EMC and the lien claimants, Global Builders, Mace Iron Works, and Accurate Housing Systems. The City sought demolition or repair of the uncompleted facility pursuant to the provisions of the Illinois Municipal Code (Code) governing the demolition of private property (65 ILCS 5/11-31-1 *et seq*. (West 2016)).  The City argued that, if EMC could not complete construction of the proposed facility, the improvements should be demolished, and the property restored to its preconstruction condition.  The City filed a later statement in support of its complaint alleging that the subject property, in its current condition, was not only "dangerous and unsafe" but also "uncompleted and abandoned" within the meaning of section 11-31-1 of the Code.

¶ 7    On May 15, 2018, the City and EMC entered a stipulation and agreed order.  The agreed order imposed two obligations upon EMC.  First, EMC agreed that it would demolish the previously constructed above-ground elements of the proposed facility and perform other site restoration activities by July 15, 2018.  If EMC failed to meet this deadline, the agreed order provided that the City would be authorized to perform that above-ground demolition work. Second, EMC agreed that if it did not recommence construction of the proposed facility by June 15, 2019, then it would remove the remaining improvements by July 15, 2019.  The remaining improvements were defined as, but not limited to, "the slab, foundation, light standards, parking facilities, curb and gutter, and utilities to the property line."  The agreed order provided that if EMC failed to recommence construction by the agreed deadline, then the City would be authorized to perform the demolition and removal of the remaining improvements.

¶ 8    As of June 14, 2019, EMC had performed the required demolition of the above-ground improvements and other site restoration but had not recommenced construction of the proposed

facility. On that date, EMC filed a motion to modify the agreed order, seeking a six-month extension of time in which to recommence construction or perform demolition of the remaining improvements. EMC alleged that it was in the process of obtaining the necessary financing to complete construction. EMC explained that its efforts to obtain funding had been hindered because it was named as a defendant in a civil suit filed by the Securities and Exchange Commission (SEC) (case no. 1:17-cv-04686) in the U.S. District Court for the Northern District of Illinois, Eastern Division. However, as of May 13, 2019, EMC had been dismissed from the civil suit and, since that time, EMC alleged that it had been diligently pursuing the steps necessary to recommence construction on the project. At a status hearing on July 18, 2019, EMC voluntarily withdrew its motion to modify the agreed order.

¶ 9     On January 13, 2020, EMC filed its emergency motion for TRO and preliminary injunction. EMC alleged that the subject property had undergone substantial improvement with almost $3 million of site utility and concrete work. On information and belief, EMC believed the City had entered into a contract to complete the demolition of the remaining improvements on the subject property. EMC argued that the City had not provided proper notice to all interested parties of the proposed demolition of the subject property. EMC also argued that there was no urgent basis to demolish the subject property as the City had waited almost seven months to enforce its right to do so under the agreed order. Finally, EMC alleged that preservation of the subject property was an ascertainable right in need of protection, irreparable harm would occur if the remaining improvements were demolished, and there was no other adequate remedy at law. EMC requested that the trial court enjoin the City from demolishing the remaining improvements and schedule a hearing on his motion for preliminary injunction.

¶ 10    On January 14, 2020, a hearing was held on EMC's emergency motion. A transcript from that hearing is not included in the record on appeal. In a written order on that date, the trial court stayed demolition and indicated that EMC was required to provide the following by 5 p.m. on January 21, 2020: (1) a detailed plan for resolving the mechanic's lien claim filed by Global Builders; (2) a written agreement by all parties that provided for Global Builders to recommence construction of the proposed facility by February 14, 2020; and (3) written evidence of proof of financing for the complete construction of the proposed facility.

¶ 11    On January 22, 2020, following a hearing, the trial court entered a written order lifting the stay and denying EMC's motion for a TRO and a preliminary injunction. The record does not contain a transcript from this hearing. In its written order, the trial court stated that the agreed order was in the nature of a settlement agreement and that EMC had not performed what was required even though it had additional time to perform. The trial court found that EMC had not complied with the agreed order and the City was entitled to enforce its rights. EMC filed a timely notice of interlocutory appeal from this order pursuant to Illinois Supreme Court Rule 307(d) (eff. Nov. 1, 2017).

¶ 12                            II. ANALYSIS

¶ 13    On appeal, EMC argues that the trial court erred in denying its motion for a TRO and not allowing a hearing on a preliminary injunction. A temporary restraining order is a drastic remedy that should only be granted in exceptional circumstances and for a brief duration. *Capstone Financial Advisors, Inc. v. Plywaczynski*, 2015 IL App (2d) 150957, ¶ 10. As the party seeking the injunction, EMC must demonstrate that there is a "fair question" as to each of the following: (1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the case.

*Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62 (2006). The failure to establish any one of these elements is a sufficient basis to deny a request for TRO. *Yellow Cab Co. v. Production Workers Union of Chicago & Vicinity, Local 707*, 92 Ill. App. 3d 355, 356 (1980). A decision to grant or deny a TRO is reviewed for an abuse of discretion. *Bradford v. Wynstone Property Owners' Association*, 355 Ill. App. 3d 736, 739 (2005). "The only question before the court of review is whether there was a sufficient showing to sustain the order of the trial court." *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co.*, 195 Ill. 2d 356, 366 (2001).

¶ 14 At the outset, we note that the record does not include transcripts from the January 14 and 22, 2020, hearings on the motion for TRO. It is the burden of the appealing party to provide the reviewing court with a sufficiently complete record to allow for meaningful appellate review. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). As a general rule, "[a]n issue relating to a circuit court's factual findings and basis for its legal conclusions obviously cannot be reviewed absent a report or record of the proceeding." *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005). In the absence of a sufficiently complete record, a reviewing court will resolve all insufficiencies apparent therein against the appellant and will presume that the trial court's ruling had a sufficient legal and factual basis. *Foutch*, 99 Ill. 2d at 391-92. While we will keep these principles in mind, we observe that the trial court entered written orders which reveal in some part its reasoning for the entered orders. Accordingly, we will review the propriety of the trial court's order denying the TRO, but any insufficiencies in the record will be construed against EMC. *Id.*

¶ 15 EMC first argues that the trial court abused its discretion in denying the TRO because it raised a fair question that it could succeed on its request to modify the agreed order. However, the record does not indicate that EMC ever requested to modify the agreed order as part of its motion for TRO. Although EMC had filed a motion to modify the agreed order prior to filing its motion

for TRO, the record indicates that EMC voluntarily withdrew the motion. Additionally, although EMC's written motion for TRO mentioned that, due to the suit for mechanic's lien and the SEC case, it was unable to obtain financing to complete the project, the TRO did not request modification of the agreed order. Rather, EMC indicated in the TRO that the basis for relief was that the City did not provide proper notice to all parties of the demolition, there was no urgent basis for the demolition, and that EMC was in the process of resolving underlying litigation that would allow it to resume construction on the subject property. Moreover, because there is no transcript from the hearing on the TRO, we must presume that EMC did not verbally request a modification of the agreed order at the hearing. *Id.* As such, EMC's argument that the trial court abused its discretion, because EMC had raised a fair question as to succeeding on the merits of a request to modify the agreed order, is forfeited because the record does not indicate that EMC ever raised such a request in the trial court as part of the TRO proceeding. *Fauley v. Metropolitan Life Insurance Co.*, 2016 IL App (2d) 150236, ¶ 55 (issues not raised in the trial court are forfeited and may not be raised for the first time on appeal).

¶ 16    Even absent forfeiture, EMC's argument is without merit. An agreed order is a recordation of an agreement between the parties and is subject to the rules of contract interpretation. *In re Marriage of Tutor*, 2011 IL App (2d) 100187, ¶ 13. Once an agreed order has been entered, it is generally binding on the parties and cannot be amended or modified without the consent of each party. *In re Marriage of Rolseth*, 389 Ill. App. 3d 969, 971 (2009). Agreed orders may be modified or vacated by a court "only upon a showing that meets the standard applied to section 2-1401 petitions [735 ILCS 5/2-1401 (West 2018)]." *Id.* at 972. The guiding principle in the administration of section 2-1401 relief is that the petition invokes the equitable powers of the trial court, which should prevent enforcement of a judgment when it would be unfair, unjust, or

unconscionable. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 225 (1986). Relief under section 2-1401 may be available to set aside an agreed order when there is newly discovered evidence, or the order resulted from a gross disparity in the capacity or position of the parties, coercion, incompetence of one of the parties or fraudulent misrepresentation. *People ex rel. Devine v. Murphy*, 181 Ill. 2d 522, 538 (1998).

¶ 17    In the present case, EMC has failed to raise a fair question as to a proper basis for modifying the agreed order. EMC asserts that a fair question was raised based on two facts. First, when the agreed order was entered it reasonably believed that it could secure financing but was hindered by the SEC's civil suit. Second, it substantially complied with the agreed order by completing the demolition of the above-ground improvements. These assertions do not establish any newly discovered evidence, inequitable bargaining position, coercion or fraud, and thus no basis for modification of the agreed order. *Id.* With respect to the SEC civil suit, we can take judicial notice, based on the case number, that the case was filed in 2017. Thus, the SEC litigation was known to EMC at the time that it entered the agreed order. With respect to substantial compliance, we acknowledge that EMC, pursuant to the agreed order, completed the removal of the above-ground improvements. However, EMC also agreed to recommence construction by June 2019, which it failed to do. Under the agreed order, this basis alone was sufficient for the City to seek demolition of the remaining improvements. *In re Marriage of McLauchlan*, 2012 IL App (1st) 102114, ¶ 21 (parties are bound to the terms of their agreements). As such, EMC has failed to raise a fair question that it could succeed on a claim to modify the agreed order.

¶ 18    EMC argues that, as a matter of equity, the City should be precluded from proceeding with demolition because the remaining improvements no longer constitute a hazard. However, the agreed order indicated that the City had the right to demolish the remaining improvements if

construction did not recommence by a specific date. Moreover, section 11-31-1 of the Code (65 ILCS 5/11-31-1 (West 2016)), allows a municipality to seek to demolish structures that not only constitute a hazard, but also structures that are "uncompleted and abandoned." Accordingly, merely because the remaining improvements and the condition of the property no longer pose a hazard is not alone a sufficient reason to preclude the City from seeking the relief that it and EMC specifically consented to in the agreed order. Although EMC argues that it will be irreparably harmed if the remaining improvements are demolished, EMC specifically contracted for this consequence in the agreed order and, as stated, has not raised a fair question that there is a reason to modify or vacate the agreed order.

¶ 19    EMC next argues that the trial court abused its discretion in denying the TRO because it failed to consider the equities of the parties with an interest in the subject property. EMC argues that the City was on notice of the mechanic's lien case and that the City would somehow be bound by the decision in that case. This argument is without merit. The present demolition case and the mechanic's lien case have been proceeding independently and the City is not a party to the mechanic's lien case and does not appear to have any ownership interest in the subject property. Any adjudication of rights in the mechanic's lien case would not affect the rights of the City with respect to proceeding with the demolition of the subject property. See *City of Chicago v. General Realty Corp.*, 133 Ill. App. 2d 662, 669 (1971) (a foreclosure action between private individuals over a specific property would not preclude the city from seeking its own action in the demolition court to enforce its ordinances as to that property).

¶ 20    Finally, EMC argues that denying the TRO was inequitable because the City failed to provide notice to the mechanic's lien claimants that it was proceeding with the demolition. EMC asserts that this was improper since the demolition would effectively extinguish the lien claimant's

recorded interests in the subject property. EMC has failed to cite any authority for the proposition that the City failed to provide any lawfully required notices and has thus forfeited this argument. *Gakuba v. Kurtz*, 2015 IL App (2d) 140252, ¶ 19 (arguments not supported by relevant authority are forfeited). Moreover, the City named the lien claimants as defendants in this demolition suit and the record indicates that the City sent notice of the hearing for the entry of the agreed order to the lien claimants. An order entered by the trial court on May 15, 2018, stated that Global Builders and Mace Iron Works were present in court and objected to the entry of the agreed order. Further, the agreed order expressly provided that "due notice has been given to the parties of record to this suit of the proposed entry of this Stipulation and Agreed Order." As such, the lien claimants were on notice that if construction did not recommence by June 15, 2019, then the City would have the right to pursue demolition of the remaining improvements. For the foregoing reasons, we cannot say that the trial court abused its discretion in denying EMC's motion for TRO and preliminary injunction.

¶ 21                                    III. CONCLUSION

¶ 22    For the reasons stated, the judgment of the circuit court of Kane County is affirmed.

¶ 23    Affirmed.