**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220316-U

Order filed June 9, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| ALEX GU, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-22-0316 |
| | ) | Circuit No. 22-EV-822 |
| ZANDRA NEELY, | ) | |
| | ) | The Honorable |
| Defendant-Appellee. | ) | Matthew G. Bertani, |
| | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Justice Davenport concurred in the judgment.
Justice Peterson, specially concurred.

_____

**ORDER**

¶ 1    *Held*:  (1) The trial court properly declined to enter summary judgment for the plaintiff, Gu, who failed to give proper notice in his eviction action, when genuine issues of material fact existed and Gu failed to establish that he was entitled to that remedy as a matter of law. (2) The trial court also did not err by entering an agreed judgment order that had been approved by the parties.

¶ 2    Plaintiff Alex Gu sought to evict his tenant, defendant Zandra Neely, for failure to pay

rent. At the eviction hearing, the trial court determined that Gu had failed to give Neely proper

notice. The trial court then sought to resolve the case by reaching an agreement between the parties and ultimately entered an agreed judgment order. After filing two unsuccessful posttrial motions, Gu filed a *pro se* notice of appeal. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          On March 8, 2022, defendant Zandra Neely signed a one-year lease for an apartment in Park Forest, Illinois, that was owned by plaintiff Alex Gu and paid $3300 for the security deposit and first month's rent. After moving in a few days later, Neely reported that the toilet was clogged and causing other water backups in the unit. Gu hired a plumber, who discovered a sewer line blockage created by a tampon and toilet tissue. The blockage was removed, and the plumber stated that the plumbing was working properly on March 25. Gu alleged that Neely was responsible for the repair costs because she or one of the other adults living in the apartment improperly disposed of materials in the toilet; Neely denied the allegation.

¶ 5          Because Neely failed to pay her second month's rent when it was due on April 9, Gu had police accompany him to the apartment to deliver a "5 Day Notice of Termination for Non-payment of Rent" on April 11. When the police knocked, no one answered, and Gu taped the five-day notice to the apartment door. Neely claimed she refused to pay the rent because the apartment was uninhabitable due to continuing plumbing problems, and the parties attempted to negotiate a solution. After they were unable to agree on Neely moving into a different apartment owned by Gu, he filed an eviction complaint in the Will County circuit court on April 19, and a hearing was set for June 9. On June 6, however, Gu filed a *pro se* "Motion for Combined Petition of Eviction and Summary Judgment."

¶ 6          At the June 9 hearing, the trial court explained that Neely was entitled to 28 days to respond to Gu's newly filed summary judgment motion. Because the eviction trial was set for

2

July 6, the trial would have to be rescheduled to a later date to accommodate a hearing on Gu's summary judgment motion. The court gave Gu the choice of withdrawing his summary judgment motion and proceeding to trial on July 6 or delaying the trial to allow his summary judgment motion to be heard first. The judge indicated that the earliest available trial date was likely sometime in August. After Gu stated that he preferred the July 6 date because he wished to proceed to trial as soon as possible, the trial court struck his motion for summary judgment.

¶ 7        At the July 6 hearing, both parties appeared without legal counsel. Gu told the trial court that he wished to regain possession of Neely's apartment and that Neely owed him $3300 in back rent. He was also seeking $1000 in damages for improperly installed air conditioning that Neely had allegedly added to the roof of the apartment building, $750 for the prior plumbing repairs, $300 to be reserved for payment of Neely's final utility bill, and $469 for Gu's legal costs, making his total damage claim $5819. Gu was unable to produce a copy of the five-day notice that he taped to apartment door, and the police officer who accompanied him was not present to testify at the hearing.

¶ 8        After the parties were sworn-in, the trial court requested and reviewed a copy of their lease, which Gu failed to attach to his complaint. In response to the trial court's questions, the parties agreed that Neely was still living in the apartment when Gu taped the notice to her door. Neely maintained that she refused to pay rent because the plumbing in the apartment was still problematic, and she denied causing those issues. In support of her claim, she submitted photographs showing problems with water damage and backed up water. She told the trial court that she intended to move as soon as possible but was having difficulty finding another apartment. After being pressed by the trial court, Neely stated that she could be moved out of the unit in 30 days.

¶ 9    Gu also claimed that Neely had caused damage to the apartment by installing an air conditioning unit on the roof without his permission, but the parties were unable to agree on basic facts, such as whether the apartment even had air conditioning. Gu asserted that the unit did not have air conditioning before Neely added the roof unit, while Neely insisted that the unit had always had central air conditioning and denied adding any equipment on the roof.

¶ 10    After listening to the parties' testimony, the judge stated that he was "going to try to resolve this case" and subsequently obtained Neely's agreement to be out of the apartment by August 7, 30 days later. The judge explained to Gu that his five-day notice had not been properly served pursuant to case law that interpreted the notice statute to permit posting only if the apartment was vacant, citing *American Management Consultant, LLC v. Carter*, 392 Ill. App. 3d 39, 57 (2009); *Figueroa v. Deacon*, 404 Ill. App. 3d 48, 53 (2010). See also 735 ILCS 5/9-211 (West 2022) (stating "[a]ny demand may be made or notice served by delivering a written or printed *** and in case no one is in the actual possession of the premises, then by posting the same on the premises"). The trial court concluded that Gu was not entitled to an eviction order because he had failed to give Neely proper statutory notice.

¶ 11    The judge then gave Gu the choice of accepting Neely's agreement to move within 30 days, without any award of monetary damages to Gu, or being awarded money damages, while Neely retained possession of the apartment. If Neeley retained possession, Gu would have to initiate a new eviction proceeding to remove her, after giving proper notice, a process that the trial court estimated could take 90 to 120 days to complete. Gu stated he did not want to start the eviction process over again and wished to regain possession of the apartment as soon as possible. After receiving confirmation from Gu that he was making that choice freely and voluntarily, the trial court entered the agreed judgment order.

4

¶ 12    Two days later, Gu filed a *pro se* "Motion for Vacate Eviction Order & Agreement and to Re-Open Case." In that motion, he asserted that he had provided Neely with proper notice under section 9-104 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/9-104 (West 2022)). He added that any error in providing notice could be excused under the *bona fide* error defense in the Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692(k)(c) (2018)) because he had erred in good faith. He also argued that the agreed judgment order was invalid because he had not reviewed a written copy prior to its entry and had not known that he would be unable to seek Neely's past due rent under it.

¶ 13    A hearing on Gu's motion was initially held before a different judge, who noted that motions to vacate were usually heard by the original judge in the case. After obtaining the parties' agreement, the hearing on the motion was rescheduled before the original trial judge on July 21.

¶ 14    At the July 21 hearing, Gu presented his *pro se* motion to vacate and reopen the case. He argued that the agreed judgment was invalid because contract law required all judgments for over $500 to be in writing and signed by both parties. He also stated that he wished to enforce the lease agreement, which would entitle him to monetary damages, and to reopen his original eviction proceeding. The trial court stated it could not proceed with the eviction proceeding because Gu had not provided Neely with proper notice. The court repeated its earlier explanation that posting the five-day notice on the apartment door did not constitute proper notice under case law interpreting the applicable statute before denying Gu's motion. Gu requested a stay of the eviction order so that he could retain legal counsel. The judge explained that Neely was still required to move out by August 7 under the agreed judgment order and that Gu would regain possession of the apartment at that time.

5

¶ 15        Gu filed a *pro se* motion to reconsider on July 26, repeating his claim that the agreed judgment order was invalid because it concerned a dispute valued at more than $500 and had not been committed to a writing that was signed by the parties, as required by Illinois contract law. The motion also indicated that the police officer who had accompanied Gu when he posted the five-day notice would provide written testimony supporting Gu's *bona fide* error defense under § 1962(k)(c) of the FCDPA (15 U.S.C. 1962(k)(c) (2018)). Gu also requested additional personal information from Neely, who was still in possession of the apartment, to enable him to pursue additional damages for any unpaid bills remaining after she moved.

¶ 16        At the August 2 hearing on the motion to reconsider, Gu stated that he had discovered "new law and new facts" that gave him the right to re-open the case. He again relied on the *bona fide* error defense in the FDCPA because his error in posting the five-day notice had been innocent and he had supporting testimony from the police officer who was present at that time. He also restated his claim that Illinois law requires contracts for more than $500 to be committed to a writing signed by the parties, making the agreed judgment order invalid.

¶ 17        The trial court again repeatedly attempted to explain to Gu why the posted notice was inadequate. It noted that Gu had been given the option at the July 6 eviction hearing to receive a money judgment without regaining possession of the apartment or to regain possession of the unit by August 7 without receiving a money judgment. Gu had voluntarily chosen to forego the monetary judgment and regain possession of the apartment sooner than he would if he had to initiate a second eviction proceeding. The court added that it lacked the authority to require Neely to give Gu the additional personal information he requested. The judge then told Gu that he was entitled to appeal the court's decisions. Gu filed a *pro se* notice of appeal in this court.

¶ 18                                    II. ANALYSIS

¶ 19     The appeal in this case addresses two issues: (1) whether the trial court properly denied Gu's motion for summary judgment; and (2) whether the agreed judgment order was valid.

¶ 20                                  A. Summary Judgment

¶ 21     When reviewing a trial court's ruling on a motion for summary judgment, we consider *de novo* whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). A summary judgment motion cannot be granted without that showing. *Robinson v. Village of Sauk Village*, 2022 IL 127236, ¶ 16.

¶ 22     Gu argues in this court that the trial court's denial of his motion for summary judgment demonstrated its bias and prejudice against him. He contends that  he was entitled to summary judgment as a matter of law because Neely failed to create any genuine issues of material fact. In support, he cites two unpublished cases decided by this court, *Bank of America, N.A. v. Sanchez*, 2015 IL App (3d) 140360-U, and *Falk v. Stathmos*, 2013 IL App (3d) 120717-U.

¶ 23     The portion of *Sanchez* cited by Gu is taken from the background section. The cited section states,

> "[T]he trial court granted summary judgment in favor of plaintiff and
> entered an order finding summary judgment to be proper because
> defendants' pleading in opposition to summary judgment, 'as pleaded
> without supporting documentation, does not raise a genuine issue of
> material fact sufficient to preclude the entry of Summary Judgment in
> favor of Plaintiff.' " *Sanchez*, 2015 IL App (3d) 140360-U, ¶ 11.

7

In *Falk*, Gu quotes only the "Held" paragraph that summarizes the appellate court's holding. That paragraph states, "Trial court properly granted summary judgment in favor of property owner who leased his property where plaintiffs' damages were caused by alterations to property made by lessee." *Falk*, 2013 IL App (3d) 120717-U, ¶ 1. He argues that the trial court's failure to grant his motion for summary judgment in light of those decisions demonstrates its bias and prejudice against him.

¶ 24    Initially, we note that the record on appeal reveals that the judge never entered an order denying Gu's summary judgment motion. Instead, the court entered an order that simply memorialized the agreed judgment approved by the parties. During that hearing, the trial court confirmed that it had not ruled on the merits of Gu's summary judgment motion, stating that if it had "ruled on [Gu's] summary judgment motion, *** [it] would have got to the same location. [The court] would have had to find that there was no proper notice."

¶ 25    In reviewing Gu's cited case law, we recognize that he relies on unpublished decisions that are not binding here and may only be considered as persuasive authority if they satisfy the requirements set forth in Illinois Supreme Court Rule 23(e). See Ill. S. Ct. R. 23(e) (eff. Jan. 1, 2021). Rule 23(e) declares that an unpublished order is "not precedential except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case. However, *a nonprecedential order entered* under subpart (b) of this rule *on or after January 1, 2021, may be cited for persuasive purposes*." (Emphases added.) Thus, under the express limitations in Rule 23(e), we may only consider unpublished decisions as persuasive authority if they were entered on or after January 1, 2021. Because *Sanchez* was entered in 2015 and *Falk* was entered in 2013, we are barred from considering them as persuasive authority in this case under Rule 23(e).

8

Nonetheless, we will consider the merits of Gu's summary judgment motion under general principles of law.

¶ 26    To be awarded summary judgment, a party must establish that "the pleadings *** on file, ***, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016); *Robinson*, 2022 IL 127236, ¶ 16. Accordingly, Gu had to demonstrate that (1) "there is no genuine issue as to any material fact," and (2) he was "entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). We will examine each showing in turn.

¶ 27    During the July 6 eviction hearing, Neely testified that she refused to pay the rent because the apartment continued to have unaddressed plumbing problems, offering some photographs in support. The hearing transcript reveals that the photographs showed backed-up water and mold, allegedly due to excess water in the bathroom and washing machine. As the trial court recognized, her testimony and photographs were sufficient to create a genuine question of material fact about whether the full rent was due under the lease. Because at least one genuine question of material fact existed in the case, Gu's summary judgment motion could not be granted by the trial court.

¶ 28    Moreover, Gu also failed to show that he was entitled to a favorable judgment as a matter of law because he did not provide Neely with the notice required under section 9-104 of the Code (735 ILCS 5/9-104 (West 2022)). As that section instructs, "[t]he demand required *** may be made by delivering a copy *** to the tenant *** or *in case no one is in the actual possession of the premises, then by posting the same on the premises*." (Emphasis added.) *Id.* Section 9-211 of the Code similarly states that "[a]ny demand may be made or notice served by delivering a written or printed *** copy thereof to the tenant *** and *in case no one is in the*

9

*actual possession of the premises, then by posting the same on the premises.*" (Emphasis added.) *Id.* § 9-211.

¶ 29    Although Gu attempted to provide Neely with the requisite notice by posting it on the apartment door, the case law interpreting the notice requirement clearly limits the availability of a posted notice to cases where the building is unoccupied. In *Carter*, this court explained that "[s]ection 9–211 is an exclusive list of permissible delivery methods and must be strictly enforced. Section 9–211 simply does not 'express' that posting notice on the occupant's door when she is in actual possession of the premises is a method of 'delivering *** copy thereof to the tenant.' 735 ILCS 5/9–211 (West 2006)." *Carter*, 392 Ill. App. 3d at 57. The court in *Figueroa* concluded that posted notice was not proper when the tenant was still in possession of the apartment, relying on the holding in *Carter* "that although defendant actually did receive notice of plaintiff's forcible entry and detainer action, strictly construing the statute, as it must, 'the method by which notice was "served" require[d] a finding that defendant did not receive proper notice and preclude[d] plaintiff from obtaining relief under the statute.' *Carter*, 392 Ill. App. 3d at 57." *Figueroa*, 404 Ill. App. 3d at 53.

¶ 30    Here, both parties agreed that Neely was still living in the apartment when Gu posted the notice on her door. Neely's temporary absence from the premises did not transform the admittedly occupied apartment into a vacant one. Because the apartment was not vacant, Gu's posted notice did not comply with the statutory requirements and was invalid. Without proof of proper notice by Gu, the trial court was barred from entering any judgment for him in the eviction action. Thus, the trial court correctly concluded that even if it had ruled on the merits of Gu's motion, it could not have granted him summary judgment.

¶ 31        Because the trial court correctly applied the law to the specific facts of this case when it declined to grant Gu's summary judgment motion, we reject Gu's contention that the judge's conduct demonstrated bias and prejudice against him, in violation of the Illinois Code of Judicial Conduct. Canon 2 of the Code is found in Illinois Supreme Court Rule 2.3 (Ill. S. Ct. R. 2.3 (eff. Jan. 1, 2023)) and states:

> "(A) A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.
>
> (B) A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, gender identity, religion, national origin, ethnicity, pregnancy, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, ***.
>
> (C) Proceedings before the court shall be conducted without manifesting bias or prejudice or engaging in harassment, based upon attributes including but not limited to race, sex, gender, gender identity, religion, national origin, ethnicity, pregnancy, disability, age, sexual orientation, marital status, socioeconomic."

No evidence in the record supports Gu's claim that the trial court's conduct violated that canon.

¶ 32                                B. Agreed Judgment Order

¶ 33        Gu next argues that the trial court acted with bias or prejudice when it entered an agreed judgment order that failed to give him possession of the apartment even though Neely refused to pay the rent. Gu asserts that the court's misconduct denied him his rights to due process of law

11

and equal protection as well as to seek a legal remedy for the wrong he incurred due to Neely's failure to comply with the lease. See Ill. Const. 1970, art. I, §§ 2, 12.

¶ 34 In support of his claims, Gu claims that the trial court failed to apply the relevant law. He points first to the trial court's failure to apply the *bona fide* error defense from the federal FDCPA (15 U.S.C. 1692k(c) (2018)). He asserted that defense in his "Motion for Vacate Eviction Order & Agreement and to Re-Open Case" filed two days after the agreed judgment order was entered. Section 1692k(c) states:

> "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. 1692k(c) (2018).

¶ 35 At the hearing on his motion to vacate and reopen the case, Gu asserted that his failure to give proper notice to Neely should be excused under that defense because any error in providing that notice was unintentional.

¶ 36 Putting aside the issues that arise from Gu's belated assertion of that defense, his reliance on the FDCPA's *bona fide* error defense fails on its merits. The FDCPA does not apply to landlords attempting to collect rents owed to them. "The FDCPA's provisions generally apply only to 'debt collectors.' " [Citation.] *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000). The FDCPA defines a "debt collector" as "any person *** who regularly collects or attempts to collect, *** *debts owed or due or asserted to be owed or due another*." (Emphasis added.) 15 U.S.C. § 1692a(6) (2018). Gu does not fall within the statutory definition of a "debt

12

collector" because he is a landlord who is attempting to collect rents that are owed to him, not to another person, under the lease with Neely.

¶ 37 Under the FDCPA, a landlord is a "creditor," which is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed," 15 U.S.C. § 1692a(4) (2018). "Creditors—as opposed to 'debt collectors'—generally are not subject to the FDCPA." [Citation.] *Pollice*, 225 F.3d at 403. Other federal case law also recognizes the principle that landlords are creditors, not debt collectors, and accordingly, may not rely on the FDCPA's *bona fide* error defense. See *Jarzyna v. Home Properties, L.P.*, 114 F. Supp. 3d 243, 253 (E.D. Pa. 2015), *aff'd*, 783 Fed. Appx. 223 (3d Cir. 2019) (concluding that Home Properties, a landlord, "is a creditor under the FDCPA, not a debt collector, and thus is not subject to the provisions at issue in this case"). Because, as a landlord-creditor, not a debt collector for another entity, Gu was not eligible to assert the FDCPA's *bona fide* error defense, the trial court did not err by denying his motion to vacate the agreed judgment order and reopen the eviction case.

¶ 38 Gu next claims that the agreed judgment order is invalid under basic principles of contract law. He asserts that because the order addressed a matter involving more than $500 but was not committed to a writing signed by the parties, it was invalid and had to be vacated. That argument appears to be premised on Gu's attempt to apply the Statute of Frauds provision of the Illinois Uniform Commercial Code, which states, in relevant part:

> "(1) Except as otherwise provided in this Section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against

13

whom enforcement is sought or by his authorized agent or broker." 810

ILCS 5/2-201(1) (West 2022).

Gu maintains that this provision governs the agreed judgment order that was entered by trial

court after being approved by the parties.

¶ 39 We are not persuaded by that argument. Trial court orders are not "contracts" and, thus,

are not governed by principles of contract law. The authority Illinois circuit courts possess to

enter orders in the cases pending before them is derived directly from the Illinois constitution.

Our constitution expressly states that

> "Circuit Courts shall have original jurisdiction of all justiciable matters
>
> except when the Supreme Court has original and exclusive jurisdiction
>
> relating to redistricting of the General Assembly and to the ability of the
>
> Governor to serve or resume office. Circuit Courts shall have such power
>
> to review administrative action as provided by law." Ill. Const. 1970, art.
>
> VI, § 9.

¶ 40 In this case, the agreed judgment order was entered as part of the trial court's normal

exercise of its constitutional authority to hear and dispose of the cases and controversies properly

before it. The trial court's ability to enter binding orders in those matters does not implicate

contract law principles because judicial orders are not contracts. Thus, the trial court did not need

to comply with contract law provisions such as the Statute of Frauds provision cited by Gu

before entering its judgment order in this case.

¶ 41 Finally, Gu makes the overarching argument that the trial court improperly pressured him

into accepting the agreed judgment order. After carefully reviewing the series of hearings held

by the trial court in this case, we find no evidence that the judge improperly induced or pressured

14

Gu into agreeing to the settlement with Neely. Indeed, the trial judge repeatedly took time to describe and explain to Gu and Neely the options and potential outcomes in the case. In particular, the court explained to Gu the significant legal problem that his failure to provide Neely with proper notice posed for the timely advancement of his eviction case. On multiple occasions, the judge also admonished Gu that the ultimate decision on whether to continue to pursue an eviction action against Neely or to accept the agreed judgment order was entirely up to him. Although Gu may now regret his choice, we can find no evidence in the record to support his claim that the trial court forced or pressured him into accepting the settlement agreement.

¶ 42                                   III. CONCLUSION

¶ 43          For the reasons stated, we affirm the judgment of the circuit court of Will County.

¶ 44          Affirmed.

¶ 46          JUSTICE PETERSON, specially concurring:

¶ 47          I concur in the result; however, I write separately as I believe the affirmance should be based on more limited grounds. Specifically, the record simply belies Gu's assertion that the court's handling of his summary judgment motion showed the court was biased. The court explained to Gu that if he wished to proceed with his summary judgment motion, the trial date would have to be continued. As Gu wanted the trial to proceed as scheduled, the court struck the motion—not due to bias, but rather to accommodate Gu's desire not to continue the trial. Because the circuit court did not rule on the summary judgment motion, and, in fact, struck the motion, this court should refrain from addressing its merits.

¶ 48          Additionally, the court entered a consent order reflecting the agreement between Gu and Neely rather than adjudicating their rights. See *In re Marriage of Rolseth*, 389 Ill. App. 3d 969, 971 (2009) ("An agreed order, also termed a consent order or a consent decree [citation], is not

15

an adjudication of the parties' rights but, rather, a record of their private, contractual agreement [citation].""). "A consent order is generally regarded as one entered by the court that recites a settlement agreement reached as an independent undertaking by the parties, which may supersede pleadings and evidence and limit the relief to be granted." *Thompson v. IFA, Inc.*, 181 Ill. App. 3d 293, 296 (1989). Regardless of the merits of Gu's *bona fide* error defense, the consent order superseded such defense and limited him to the relief stated therein. Therefore, it is unnecessary for this court to discuss the merits of it. Further, the statute of frauds is inapplicable to the consent order which reflected the agreement made by the parties in open court. See *Guyton v. Guyton*, 17 Ill. 2d 439, 444 (1959) (indicating that when the parties' settlement agreement is incorporated into a decree, the agreement merges with the decree such that the parties' rights are based on the decree and the statute of frauds is inapplicable). As Gu otherwise failed to establish a valid basis to vacate the consent order (see *In re Marriage of Rolseth*, 389 Ill. App. 3d at 971-72 (discussing the standard for vacating or modifying consent orders)) his appeal lacks merit.