**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220211-U

Order filed June 28, 2023

_

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| SCRIBE HOLDINGS, LLC, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-22-0211 |
| | ) | Circuit No. 21-LM-871 |
| | ) | |
| MICHEL SHARRITT, | ) | Honorable |
| | ) | Craig R. Belford, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_

JUSTICE PETERSON delivered the judgment of the court.
Justices Hettel and Albrecht concurred in the judgment.

_

**ORDER**

¶ 1     *Held*:  Defendant failed to cite authority, as required, in support of her contention that the trial court erred by failing to *sua sponte* dismiss the case and this issue was superseded by the agreed order. The court did not deny defendant a trial by jury or fail to hear her summary judgment motion. Defendant failed to provide an adequate record to support her claim of judicial misconduct or coercion.

¶ 2     Defendant, Michel Sharritt, appeals the Du Page County circuit court's eviction order.

Sharritt argues that the court erred by failing to dismiss the case immediately when it realized the

case was a foreclosure case instead of an eviction case or upon discovering the notice of default and forfeiture did not comply with law. She further argues that the court erred by denying her a trial by jury and failing to hear her summary judgment motion. Last, Sharritt argues that the court engaged in judicial misconduct and coerced her into an agreement. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4           Plaintiff Scribe Holdings, LLC filed an eviction complaint against Sharritt and unknown occupants on October 5, 2021, alleging that Sharritt failed to make payments pursuant to an installment agreement. Scribe sought possession of the subject property. Attached to the complaint was a copy of the 30-day notice of default and forfeiture served on Sharritt by email and mail on June 3, 2021, and the ten-year contract for special warranty deed. Sharritt filed a *pro se* appearance requesting a jury trial.

¶ 5           On October 27, 2021, the parties appeared before the court. Scribe's attorney indicated the matter was a "bit different" in that it involved a 30-day notice of default regarding an articles agreement for deed where payment had not been made. She indicated they were looking for possession. Sharritt noted that she did not believe she was served correctly and referenced the notice of default. She also stated she was given a declaration paper on September 23, 2021. The court set the matter for mediation and entered a residential eviction mediation order. The mediation was unsuccessful.

¶ 6           On November 10, 2021, the court set the matter for a bench trial on December 7, 2021. On November 29, 2021, counsel for Sharritt filed an appearance and a motion to continue trial, noting that Sharritt requested a jury trial. On December 7, 2021, the court set the matter for a jury trial on March 28, 2022. Sharritt's counsel filed a motion for summary judgment, arguing

2

that the notice of default and forfeiture failed to comply with certain statutes and executive orders. The court set a briefing schedule and a hearing on January 25, 2022.

¶ 7        At the hearing on January 25, 2022, Scribe's counsel informed the court they did not proceed with briefing on the motion for summary judgment because they were attempting to settle the matter. Sharritt's counsel indicated they hoped to have the matter resolved by February 19, 2022. In discussing whether the trial should be rescheduled, Scribe's counsel indicated that they did not have any indication of how Sharritt was going to come up with the funds needed for settlement and that they were in the range of $400,000. Sharritt's counsel indicated they had an agreed amount and that he believed the money would be available on February 19, 2022. Ultimately, the court did not reschedule trial and also set another briefing schedule for summary judgment. The summary judgment motion was set for a hearing on February 23, 2022.

¶ 8        On the February 23, 2022, Scribe's counsel indicated that she did not file a responsive brief to the motion for summary judgment because she had received information indicating that Sharritt would be obtaining funds and showing the funds were available such that they would be able to close the deal on February 18, 2022. However, the funding was delayed and they were not able to close. She asked for a date when both parties, along with counsel, could be in court. The court struck the trial date and set a hearing for March 9, 2022. It also continued the summary judgment motion. The court asked if the parties envisioned requiring the court's assistance with any conversations. Sharritt's counsel responded that he thought the court would be helpful and may ask the court to call Sharritt's family member.

¶ 9        On March 9, 2022, the court entered an order stating that the parties agree that:

(1) Sharritt would purchase the property from Scribe for $393,000 on or before May 15, 2022,

3

and Scribe would cooperate with closing; (2) if Sharritt was unable to purchase the property, then she and all occupants would vacate the property on or before May 15, 2022; (3) if Sharritt failed to comply with (1) and/or (2), Scribe would be granted an immediate eviction order on the compliance date with no stay of enforcement; and (4) a compliance status was set for May 18, 2022. The record does not contain a transcript or bystander's report of the hearing on March 9, 2022.

¶ 10    On May 18, 2022, Sharritt's counsel advised the court that they tried to have a closing but the "private lender did not come through with the funds." He further advised that Sharritt had a mortgage application pending and would be able to close by June 3, 2022, if the court would provide an extension. Counsel provided further details of an offer if Scribe would agree to an extension. Scribe's counsel stated that Scribe wanted to enforce the agreement and have an eviction order entered that day. After some argument by Sharritt's counsel, the court noted that this was a fully negotiated agreement that was a product of an extended pretrial conference, where all parties were present and represented by counsel. The court further stated that the negotiations were conducted in good faith. The court noted that counsel made an offer to Scribe for an extension but Scribe rejected that offer and it could not compel Scribe to accept any new terms or enter into a new agreement. The court inquired if counsel disputed that Sharritt failed to comply with paragraphs (1) or (2) of the agreement and counsel stated that they tried to close and had a person willing to come with a cashier's check but Scribe refused to cash the check. The court inquired whether Sharritt purchased the property and counsel responded negatively. It inquired whether Sharritt vacated the property and counsel stated she did not. The court found Sharritt failed to comply with paragraph (1) and (2) of the agreement and consequently it was entering an immediate eviction order with no stay of enforcement. Sharritt's counsel then stated,

4

"I know you did what you had to do, but no person should do what [Scribe] is doing in this case." The court reminded counsel that this was an agreement counsel helped negotiate. To which counsel responded, "Under the threat of eviction. That was no voluntary—" The court interjected that it was present for negotiations and there was no coercion. Counsel stated that it was coercion and the court told Sharritt that she would have to vacate the house. The court reiterated that it was a fully negotiated agreement, entered into voluntarily. The eviction order was entered May 18, 2022.

¶ 11 Sharritt filed a *pro se* emergency motion to stay and reconsider. The motion argued that Scribe did not comply with the agreement because it did not cooperate in the closing. Specifically, the agreement did not call for any specific manner of how Scribe would receive the funds but Scribe would not cooperate with the closing unless the funds were wired. At the hearing on the motion, Sharritt argued that the agreement required Scribe to cooperate with closing. Further, Sharritt stated that she was at the closing and had a cashier's check but Scribe would not accept it because they wanted the funds wired. She noted the cashier's check was from a friend who was going to purchase the property for her and she would pay him back. Scribe's counsel indicated that Sharritt's counsel had told her that the funds would be given to the title company by cashier's check or wired and that Scribe would get the funds from the title company or wired to its account if they wanted to provide wiring instructions. She provided wiring instructions and told Sharritt's counsel all the documents were signed by Scribe. Scribe's counsel stated that there was no copy of a cashier's check and that Sharritt allegedly had a cashier's check from a third party. They had no idea who the third party was. She further advised that they had nothing but silence from Sharritt's counsel during closing and then the title company advised them that the closing was cancelled. Counsel stated that subsequently they received an email

5

from Sharritt's attorney wanting to extend the closing until June 3, 2022. She argued they were ready and able to close and Scribe fully cooperated with closing. The court asked Sharritt to clarify that it was a third party that was prepared to purchase the property and she stated that was correct. When the court noted that the agreement was that she buy the property, not some third party, she stated that her name would be on the paperwork and she would have been the one purchasing the property.

¶ 12    In response to the arguments, the court noted that Sharritt had an attorney at the compliance hearing and he did not ask the court for an evidentiary hearing or present evidence on whether Scribe complied with the agreement, rather he informed the court the closing had not occurred and made a proposal for a new agreement. Based on that, the court stated it would not reopen the hearing to conduct a trial about what happened at the closing. When Sharritt noted that the transcript shows counsel had stated Scribe did not comply, the court reiterated that counsel did not ask for a hearing on that issue and did not argue the agreement should not be enforced. The court stated it was enforcing the terms of the agreement and denied Sharritt's motion. Sharritt appeals.

¶ 13                                    II. ANALYSIS

¶ 14    Sharrit argues: (1) the court erred by not dismissing the case immediately after realizing it was a foreclosure case rather than an eviction case or after discovering the notice of default failed to comply with applicable statutes and executive orders; (2) the court denied her a trial by jury; (3) the court erred by failing to hear her motion for summary judgment; and (4) the court allowed "judicial failure and misconduct by coercing the Defendant into an agreement by threatening eviction."

6

¶ 15    "An agreed order, also termed a consent order or a consent decree [citation], is not an adjudication of the parties' rights but, rather, a record of their private, contractual agreement [citation]." *In re Marriage of Rolseth*, 389 Ill. App. 3d 969, 971 (2009). "A consent order is generally regarded as one entered by the court that recites a settlement agreement reached as an independent undertaking by the parties, which may supersede pleadings and evidence and limit the relief to be granted." *Thompson v. IFA, Inc.*, 181 Ill. App. 3d 293, 296 (1989). "Once such an order has been entered, it is generally binding on the parties and cannot be amended or varied without the consent of each party." *In re Marriage of Rolseth*, 389 Ill. App. 3d at 971. Because an agreed order is simply the court's recording of a settlement agreement between the parties, it is ordinarily not appealable. *City of Marseilles v. Radke*, 287 Ill. App. 3d 757, 760 (1997). "[A]greed orders may be modified or vacated only upon a showing that meets the standard applied to section 2-1401 petitions, a standard that" may potentially be met by showing coercion. *In re Marriage of Rolseth*, 389 Ill. App. 3d at 971-72.

¶ 16    First, Sharritt's argument that the court erred by failing to immediately dismiss the matter is in essence an argument that the court had a duty to *sua sponte* dismiss the matter upon discovering purported defects or defenses, without such issues being raised by a party. However, although she cites some authority in her argument sections, she fails to provide any authority to support her contention that the circuit court was required to *sua sponte* dismiss the matter. This failure results in forfeiture. See *People v. Ward*, 215 Ill. 2d 317, 332 (2005). ("A point raised in a brief but not supported by citation to relevant authority *** is *** forfeited."); Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (providing that appellant's brief shall contain citation to the authorities relied on). Regardless, Sharritt came to an agreement with Scribe, as reflected in the March 9, 2022, agreed order, and this order did not preserve any defenses, such as a lack of

proper notice or whether it was the proper type of action. The agreed order, therefore, superseded these issues and limited any relief Sharritt could seek. See *Thompson*, 181 Ill. App. 3d at 296.

¶ 17 Next, the court did not deny Sharritt a jury trial or fail to hear her motion for summary judgment. To the contrary, the matter was set for a jury trial and a briefing schedule was set for the summary judgment motion. However, the trial date was vacated and the summary judgment motion was continued pending settlement negotiations. Ultimately, neither a hearing on the summary judgment motion nor a jury trial was necessary because the parties came to an agreement to settle the matter, as reflected in the agreed order entered on March 9, 2022. Sharritt did not move to vacate that order. Therefore, the court properly enforced the terms of the agreement by entering an eviction order on May 18, 2022, when it was shown Sharritt neither bought the subject property nor vacated it by May 15, 2022.[1]

¶ 18 Sharritt argues on appeal that the agreed order was procured by coercion. Although Sharritt did not move to vacate the agreed order on the basis of coercion, her counsel stated to the court that the agreed order was coerced and the court replied that it was present during negotiations, the agreement was not coerced, and it was entered into voluntarily. The record on appeal does not contain a transcript or bystander's report of the March 9, 2022, hearing wherein the parties came to the agreement. "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such

_____

[1]Although Sharritt argued in her motion to reconsider that Scribe failed to comply with the agreement by failing to cooperate with closing, she does not raise it as an argument in her opening brief. We note that she does make some references to the alleged failure to comply in her reply brief. To the extent she was attempting to raise an argument regarding compliance, she is prohibited from raising an argument for the first time in a reply brief. See *BAC Home Loans Servicing*, *LP v. Mitchell*, 2014 IL 116311, ¶ 23 ("We further note that this court has repeatedly held an appellant's failure to argue a point in the opening brief results in forfeiture under Supreme Court Rule 341(h)(7).") Regardless, as she, through her attorney, failed to fully address the compliance issue or request an evidentiary hearing on it during the May 18, 2022, compliance hearing, we would be unable to address the issue as the record is devoid of any factual determinations or evidence on the issue which we could review.

8

a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Based on Sharritt's failure to provide an adequate record to support her claim of coercion, we presume the court's entry of the agreed order and its subsequent findings that the agreement was not coerced were in conformity with the law and had a sufficient factual basis. Accordingly, we affirm the judgment of the circuit court.

¶ 19                                    III. CONCLUSION

¶ 20        The judgment of the circuit court of Du Page County is affirmed.

¶ 21        Affirmed.